UNITED STATES  DISTRICT COURT

Northern District of California

San Francisco Division

EDGARDO C. RUBIO,

               Plaintiff,

     v.

U.S. BANK N.A., AS TRUSTEE FOR THE
NOTEHOLDERS OF AEGIS ASSET
BACKED SECURITIES TRUST 2005-3;
OCWEN LOAN SERVICING LLC;
WESTERN PROGRESSIVE, LLC;
MORTGAGE ELECTRONIC
REGISTRATION SYSTEMS, INC.; and
DOES 1 - 100, Inclusive.

               Defendants.

_____/

No. C 13-05752 LB

**ORDER GRANTING MOTION TO
DISMISS FIRST AMENDED
COMPLAINT**

[ECF No. 20]

## INTRODUCTION

Plaintiff Edgardo Rubio sued Defendants U.S. Bank, Ocwen Loan Servicing, Western

Progressive, and Mortgage Electronic Registration Systems in connection with foreclosure

proceedings commenced against his San Francisco property.  *See* First Amended Complaint

("FAC"), ECF No. 16.[1]  Defendants move to dismiss.  Upon consideration of the papers submitted

---

     [1]  Citations are to the Electronic Case File ("ECF") with pin cites to the electronically-
generated page number at the top of the document.

C 13-05752 LB
ORDER

UNITED STATES DISTRICT COURT
For the Northern District of California

**UNITED STATES DISTRICT COURT**
For the Northern District of California

1   and applicable legal authorities, the court **GRANTS** the motion to dismiss.[2]

2   **STATEMENT**

3   **I. BACKGROUND FACTS**[3]

4       Plaintiff Edgardo Rubio took out a $610,000 mortgage loan from Aegis Funding Corp. on a

5   property located at 760 Bacon Street, San Francisco, California (the "Property"). *See* First Amended

6   Complaint ("FAC") ¶¶ 3, 9, ECF No. 16. He secured the loan with a Deed of Trust ("DOT"). On

7   April 21, 2005, Mr. Rubio recorded the DOT in the Official Records of the San Francisco County

8   Recorder's Office, as document number H941528.[4] *Id.* ¶¶ 3, 9, Ex. A (the Deed of Trust). The DOT

9   names Amy Mandart as the Trustee. *See id.* Ex. A at 1. It also names Mortgage Electronic

10  Registration Systems, Inc. ("MERS") as "nominee for Lender and Lender's successors and assigns."

11  *Id.* Plaintiff alleges that MERS is a corporation that has been suspended from doing business in

12  California since March 25, 2009, is not licensed to do business in California, and at all relevant

13  times was illegally conducting business in Alameda County, California. *Id.* ¶ 6.

14      The DOT includes provisions for acceleration and remedies, as follows:

15          22.  Acceleration; Remedies.  Following Borrower's breach of any covenant or
        agreement in this Security Instrument, Lender at its option may require immediate payment
16      in full of all sums secured by this Security Instrument without further demand and may
        invoke the power of sale and any other remedies permitted by Applicable Law.  Lender shall
17      be entitled to collect all expenses incurred in pursuing the remedies provided in this Section
        22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.
18
            If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a
19      written notice of the occurrence of an event of default and of Lender's election to cause the
        Property to be sold.  Trustee shall cause this notice to be recorded in each county in which
20      any part of the Property is located.  Lender or Trustee shall mail copies of the notice as
        prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable
21      Law.  Trustee shall give public notice of sale to the persons and in the manner prescribed by
        Applicable Law.  After the time required by Applicable Law, Trustee, without demand on
22      Borrower, shall sell the Property at public auction to the highest bidder at the time and place
        and under the terms designated in the notice of sale in one or more parcels and in any order
23

24      _____

25      [2] Pursuant to Civil Local Rule 7-1(b), the court finds this matter suitable for determination
        without oral argument and vacates the April 3, 2014 hearing.

26      [3] The following facts are taken from the complaint, the documents attached to it, and the
27      facts subject to judicial notice.

28      [4] Unless otherwise specified, the recorded documents were filed in the San Francisco County
        Reorder's Office.

UNITED STATES DISTRICT COURT
For the Northern District of California

1    Trustee determines.  Trustee may postpone sale of all or any parcel of the Property by public
     announcement at the time and place of any previously scheduled sale.  Lender or its designee
2    may purchase the Property at any sale.

3    *Id.* Ex. A at 15; *see id.* ¶¶ 24-26 (discussing this provision).  The DOT contains other provisions that

4    relate to the lender's right to substitute trustees.

5          24.  Substitute Trustee:  Lender, at its option, may from time to time appoint a successor
     trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by
6    Lender and recorded in the office of the Recorder of the county in which the Property is
     located.  The instrument shall contain the name of the original Lender, Trustee and Borrower,
7    the book and page where this Security Instrument is recorded and the name and address of
     the successor trustee.  Without conveyance of the Property, the successor trustee shall
8    succeed to all the title, powers and duties conferred upon the Trustee herein and by
     Applicable Law.  This procedure for substitution of trustee shall govern to the exclusion of
9    all other provisions for substitution.

10   *Id.* Ex. A at 15; *see id.* ¶ 27 (discussing this provision).

11        On or before June 28, 2005, Aegis securitized and sold the beneficial interest in Plaintiff's Deed

12   of Trust to the Aegis Asset Backed Securities Trust 2005-3, Mortgage-Backed Notes (the "Trust").

13   *Id.* ¶ 10.  The Trust was created by a Pooling and Servicing Agreement ("PSA") that named

14   Wilmington Trust Company as Trustee.  *Id.* ¶ 10, Ex. B at 6, 21.  Wilmington Trust Company's

15   assets, including the Trust, were first purchased by Wachovia Bank, N.A., and then by U.S. Bank,

16   N.A.  *Id.* ¶ 11.  U.S. Bank currently holds itself out as trustee of the Trust and as the beneficial

17   interest holder of Mr. Rubio's DOT.  *Id.*  According to a "Property Securitization Report" regarding

18   Mr. Rubio's property, the Trust is governed by the laws of New York.  *Id.*, *see id.* Ex. B at 21.

19        On July 15, 2009, Western Progressive, LLC as Trustee to the DOT recorded a Notice of Default

20   and Election to Sell Under Deed of Trust (the "First NOD").  *Id.* ¶ 12.  At all relevant times,

21   Western was a limited liability company organized under the laws of Delaware and registered with

22   the California Secretary of State as business entity no. 200835710284.  *Id.* ¶ 5.

23        On October 28, 2009, Aztec Foreclosure Corporation, recorded a substitution of trustee in which

24   MERS "solely as nominee for U.S. Bank National Association, as Indenture Trustee on behalf of the

25   Noteholders of Aegis Asset Backed Securities Trust 2005-3, Mortgage-Backed Notes as serviced by

26   Ocwen Loan Servicing, LLC" substituted Aztec as the trustee of Mr. Rubio's DOT.  *See* RJN Ex. 2.

27   Also on October 28, 2009, Aztec Foreclosure Service recorded a Notice of Trustee's Sale

28   ("NOTS").  *See* FAC ¶ 13.

UNITED STATES DISTRICT COURT
For the Northern District of California

1    On June 23, 2011, "LSI Title Company, as Agent for Western as Trustee to the DOT" recorded a

2    second NOD.  *Id.* ¶ 14; *see* RJN Ex. 3.

3    On July 25, 2011, another Assignment of Deed of Trust was recorded.  FAC ¶ 15; *see* RJN Ex. 4.

4    In this Assignment, Defendant MERS, "acting solely as nominee for Aegis Funding Corporation,

5    purported to assign the beneficial interest in Rubio's DOT "including all rights title and interest in

6    the mortgage to U.S. BANK, N.A., AS TRUSTEE FOR THE NOTEHOLDERS OF AEGIS ASSET

7    BACKED SECURITIES TRUST 2005-3."  *Id.* ¶ 15.  The document was signed on July 1, 2011, but

8    states that the assignment was "entered into as of the 24th day of August, 2007."  *See* RJN Ex. 4.

9    On September 7, 2011, Western recorded a Notice of Rescission of Notice of Default rescinding

10   the June 23, 2011 Notice of Default.  *See* RJN Ex. 5.

11   On March 9, 2012, Western, as Trustee to the DOT, recorded a Third NOD.  FAC ¶ 16; *see* RJN

12   Ex. 6.

13   Mr. Rubio alleges that on July 2, 2012, Aegis Funding Company recorded a Substitution of

14   Trustee ("SOT") that purported "to substitute Western in as Trustee to the DOT."  FAC ¶ 17.

15   Although it had not previously been named as trustee, Western had been recording documents since

16   the July 15, 2009 NOD.  *Id.*  Also on July 2, 2012, LSI Title Agency recorded an SOT naming

17   Western as the Trustee.  *See* RJN Ex. 7.[5]  This SOT was signed by "U.S. Bank National Association,

18   as Trustee on behalf of the Noteholders of Aegis Asset Backed Securities Trust 2005-3 Mortgage-

19   Backed Notes, By Ocwen Loan Servicing, LLC, its attorney in fact."  *Id.*  Ocwen Loan Servicing,

20   LLC is a Limited Liability Company organized under the laws of Delaware and registered in

21   California as business entity no. 200213810063.  *Id.* ¶ 4.

22   Western recorded a second, third, and fourth Notice of Trustee's Sale in the San Francisco

23   County Recorder's Office on July 2, 2012, August 30, 2013, and September 4, 2013, respectively.

24   *Id.* ¶¶ 18-20; RJN Ex. 8 (September 4, 2013 Notice of Trustee's Sale).  Thereafter, Trustee's Sale

25   No. 2011-16973 was scheduled for January 27, 2014, to be conducted by Western on behalf of U.S.

26   _____

27        [5]  It seems likely that the FAC refers to the SOT attached as Exhibit 7 to Defendants'
     Request for Judicial Notice, which was not recorded by Aegis Funding Company.  Because the court
28   presumes the truth of Plaintiff's allegations, it assumes there are different SOTs.  The distinction
     does not change the analysis.

C 13-05752 LB
ORDER                                    4

UNITED STATES DISTRICT COURT
For the Northern District of California

1   Bank, as Trustee. *Id.* ¶ 21.

2   **II. PROCEDURAL HISTORY**

3       Plaintiff filed his original complaint in San Francisco County Superior Court on November 6,

4   2013, against U.S. Bank, Ocwen Loan Servicing, and Western. *See* Complaint, ECF No. 1-1 at 4.

5   Defendants removed this action from state court on December 12, 2013. *See* Notice of Removal,

6   ECF No. 1. On December 19, 2013, Defendants filed a motion to dismiss Plaintiff's claims.

7   *See* Motion to Dismiss, ECF No. 7. On January 9, 2014, Plaintiff filed the FAC. *See* ECF No. 16.

8   The court denied the motion to dismiss as moot. *See* ECF No. 17.

9       In the FAC, Plaintiff asserts claims for (1) breaches of express agreements, (2) breaches of

10   implied agreements, (3) slander of title, (4) wrongful foreclosure, (5) violation of California Civil

11   Code section 2923.5, (6) violation of the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601, *et seq.*,

12   (7) violation of the Real Estate Settlement Procedures Act[6] ("RESPA"), 12 U.S.C. § 2604, (8)

13   violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq.*, (9)

14   violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962,

15   and (10) violations of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code

16   § 17200.

17       Defendants thereafter moved to dismiss. *See* ECF No. 20.

18                                    **ANALYSIS**

19   **I. MOTION TO DISMISS**

20       Rule 8(a) requires that a complaint contain a "short and plain statement of the claim showing that

21   the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint must therefore provide a

22   defendant with "fair notice" of the claims against it and the grounds for relief. *See Bell Atlantic*

23   *Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (quotation and citation omitted).

24       A court may dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6) when it does

25   not contain enough facts to state a claim to relief that is plausible on its face. *See Twombly,* 550

26   U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the

27   _____

28       [6] Plaintiff misnumbered claims seven through ten. *See* FAC at 15, 18, 21, 23, 29 (listing the sixth claim twice). The court follows the correct number sequence.

court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 129 S. Ct. 1937, 1949 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 557). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555 (internal citations and parentheticals omitted).

In considering a motion to dismiss, a court must accept all of the plaintiff's allegations as true and construe them in the light most favorable to the plaintiff. *See id.* at 550; *Erickson v. Pardus,* 551 U.S. 89, 93-94 (2007); *Vasquez v. Los Angeles County*, 487 F.3d 1246, 1249 (9th Cir. 2007). In addition, courts may consider documents attached to the complaint. *Parks School of Business, Inc. v. Symington,* 51 F.3d 1480, 1484 (9th Cir. 1995) (citation omitted). If the court dismisses the complaint, it should grant leave to amend even if no request to amend is made "unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (*quoting Cook, Perkiss and Liehe, Inc. v. Northern California Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990)).

## II.  REQUEST FOR JUDICIAL NOTICE

Defendants ask for judicial notice of the following documents, all of which were recorded in the official records of San Francisco County: (1) a deed of trust that was recorded on April 21, 2005; (2) a Substitution of Trustee that was recorded on October 28, 2009; (3) a Notice of Default that was recorded on June 23, 2011; (4) an Assignment of Deed of Trust that was recorded on July 25, 2011; (5) a Notice of rescission of Notice of Default that was recorded on September 7, 2011; (6) a Notice of Default that was recorded on March 9, 2012; (7) a Substitution of Trustee that was recorded on July 2, 2012; and (8) a Notice of Trustee's Sale recorded on September 4, 2013. Request for Judicial Notice ("RJN"), ECF No. 21, Exs. 1-7.

In considering a motion to dismiss, the court can consider material outside the pleadings that is

UNITED STATES DISTRICT COURT
For the Northern District of California

1   properly the subject of judicial notice.  *See* Fed. R. Evid. 201; *Lee v. City of Los Angeles*, 250 F.3d

2   668, 689 (9th Cir. 2001); *MGIC Indemnity Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986).

3   The court also may take judicial notice of material incorporated by reference into the complaint

4   without converting the motion to dismiss into a motion for summary judgment.  *Coto Settlement v.*

5   *Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010); *Intri–Plex Technologies, Inc. v. Crest Group, Inc.*,

6   499 F.3d 1048, 1052 (9th Cir. 2007).  Documents are incorporated into the complaint by reference

7   "in situations where the complaint necessarily relies upon a document or the contents of the

8   document are alleged in a complaint, the document's authenticity is not in question and there are no

9   disputed issues as to the document's relevance." *Coto Settlement*, 593 F.3d at 1038; *see United*

10  *States v. Corinthian Colleges*, 655 F.3d 984, 999 (9th Cir. 2011); *Knievel v. ESPN*, 393 F.3d 1068,

11  1076 (9th Cir. 2005); *Parrino v. FHP, Inc.*, 146 F.3d 699, 705, 706 n.4 (9th Cir. 1998), *rev'd by*

12  *statute on other grounds*; *Int'l Audiotext Network v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir.

13  1995) (considering an agreement that was not specifically incorporated into the complaint because

14  the complaint "relies heavily upon its terms and effect" such that the agreement is "integral" to the

15  complaint).  The defendant can attach to a motion to dismiss documents referenced in the complaint

16  in order to refute the plaintiff's claims, and the court may consider them.  *Branch v. Tunnell*, 14 F.3d

17  449, 454 (9th Cir. 1994) (*overruled on other grounds in Galbraith v. County of Santa Clara* 307

18  F.3d 1119, 1127 (9th Cir. 2002)).

19      Because RJN Exhibits 3-4, 6 and 8 are referenced in the FAC and form the basis of allegations

20  contained therein, the court may take judicial notice of them and may consider the facts within them.

21  Plaintiff does not object to the court taking judicial notice of the existence of these documents – all

22  of which are public records – but he objects to the court taking judicial notice of the "facts"

23  contained within them as "hearsay and reasonably subject to dispute."  Opp'n to RJN, ECF No. 25.

24  Because these documents are incorporated by reference into the complaint, the court can consider

25  them in full.

26      RJN Exhibits 2, 5, and 7 are public records the existence of which is not subject to dispute, so

27  the court takes judicial notice of the documents and undisputed facts contained within them.  *See*

28  *See Lee*, 250 F.3d at 689-90.  Because Plaintiff's objects to the facts (though he does not specifically

1  dispute them), the court does not take judicial notice of the facts within Exhibits 2, 5, and 7.[7]

2  **III. GENERALLY APPLICABLE ARGUMENTS**

3      **A. Western Progressive's Conduct is Privileged**

4      To the extent that Plaintiff challenges Western Progressive's recording of statutorily-required

5  notices or performing statutorily-required foreclosure procedures, they are privileged

6  communications under the qualified common-interest privilege of California Civil Code § 47.

7  Section 47 creates a qualified privilege for any communication made "without malice, to a person

8  interested therein."  Cal. Civ. Code § 47(c).  This privilege applies to all torts other than malicious

9  prosecution.  *Edwards v. Centex Real Estate Corp.*, 53 Cal. App. 4th 15, 29 (1997) (discussing the

10  expansion of section 47 beyond defamation claims).

11      Section 2924(d) "makes the recording of the notice of default by the beneficiary, and any other

12  statutorily authorized act of the beneficiary acting as trustee, a privileged communication under

13  section 47."  *Kachlon v. Markowitz*, 168 Cal. App. 4th 316, 333-34 (2008).  Additionally, section

14  2924(b) creates a privilege for trustees: "In performing acts required by this article, the trustees shall

15  incur no liability for any good faith error resulting from reliance on information provided in good

16  faith by the beneficiary regarding the nature and the amount of the default under the secured

17  obligation, deed of trust, or mortgage."  Cal. Civ. Code § 2924(b).

18      Here, the FAC does not allege that Western acted with malice or did not rely in good faith on the

19  information provided by the beneficiary.  *See generally* FAC.  In opposition, he argues that

20  "Defendants acted with the required amount of disregard" because they recorded the documents at

21  issue with knowledge of the facts underlying Plaintiff's wrongful securitization theory (discussed

22  below).  Opp'n at 19.  This argument is unsupported by factual allegations that Western had the

23  requisite knowledge or acted with malice.  Plaintiff does not otherwise allege any conduct by

24  Western that would fall outside of the immunity afforded a trustee related to its involvement in a

25  nonjudicial foreclosure sale.  *Perez v. Wells Fargo Bank, N.A.*, No. C-11-02279 JCS, 2011 WL

26  3809808, at *12-*13 (N.D. Cal. Aug. 29, 2011).  He fails to state a claim against Western.

27

28

UNITED STATES DISTRICT COURT
For the Northern District of California

---

    [7]  Exhibit 1 appears to be a copy of the DOT attached to the FAC.

UNITED STATES DISTRICT COURT
For the Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**B.  Standing to Challenge Defendants' Right to Foreclose**

The next issue is whether, as a matter of law, Plaintiff can bring a suit to challenge Defendants' right to foreclose.  Defendants argue that Plaintiff's suit is barred by the decision in *Gomes v. Countrywide Home Loans, Inc.*, 192 Cal. App. 4th 1149 (2012).  Motion at 11-12.  The court disagrees.  As Judge Chen has explained:

> *Gomes* held that California Civil Code § 2924(a)(1) does not "provide for a judicial action to determine whether the person initiating the foreclosure process is indeed authorized."  *Id.* at 1155, 121 Cal. Rptr. 3d 819.  But the issue in *Gomes* was not whether the wrong entity had initiated foreclosure; rather, the issue was whether the company selling the property in the nonjudicial foreclosure sale (MERS) was authorized to do so by the owner of the promissory note.  *See id.* at 1155, 121 Cal. Rptr. 3d 819 (rejecting the argument that a plaintiff may test whether the person initiating the foreclosure has the authority to do so; "[t]he recognition of the right to bring a lawsuit to determine a nominee's authorization to proceed with foreclosure on behalf of the noteholder would fundamentally undermine the nonjudicial nature of the process and introduce the possibility of lawsuits filed solely for the purpose of delaying valid foreclosures").  Notably, the *Gomes* court distinguished a case cited by the plaintiff precisely because, in that case, "the plaintiff alleged wrongful foreclosure on the ground that assignments of the deed of trust had been improperly backdated, and thus the wrong party had initiated the foreclosure process.  No such infirmity is alleged here."  *Id.*  Thus, *Gomes* explicitly avoided the scenario pled here, in which "the plaintiff's complaint identified a specific factual basis for alleging that the foreclosure was not initiated by the correct party."  *Id.* at 1156.  *Gomes* is therefore inapposite.

*Tamburri v. Suntrust Mortgage, Inc.*, No. C–11–2899 EMC, 2011 WL 6294472, *4 (N.D. Cal. Dec. 15, 2011) (footnote omitted); *see Naranjo v. SBMC Mortgage*, No. 11-cv-2229-L(WVG), 2012 WL 3030370, at *3 (S.D. Cal. July 24, 2012) (finding defendants' reliance on *Gomes* to be "misguided" where plaintiff alleged "that the transfer of rights to the WAMU Trust is improper, thus Defendants consequently lack the legal right to either collect on the debt or enforce the underlying security interest").  Here, Plaintiff does not seek to determine whether Defendants are authorized to foreclose; rather, he specifically alleges that they are not.  While the factual basis is not clearly alleged in the current complaint, on this record, the court does not apply *Gomes* to preclude Plaintiff from challenging Defendants' standing to foreclose and instead dismisses the claims on other grounds.

**C.  Whether Plaintiff Must Allege Prejudice From Foreclosure**

Defendants also move to dismiss on the basis that Plaintiff was not prejudiced by the challenged foreclosure.  Motion at 12.

UNITED STATES DISTRICT COURT
For the Northern District of California

1   Under California law, to challenge a foreclosure sale successfully, the plaintiff must provide

2   evidence of failure to comply with the procedural requirements for the foreclosure sale that cause

3   prejudice to the person attacking the sale. *See Angell v. Superior Court,* 73 Cal. App. 4th 691, 700

4   (1999). *See, e.g., Siliga v. Mortgage Electronic Registrations Systems, Inc.*, 219 Cal. App. 4th 75,

5   85 (2013) (borrowers lacked standing to complain about loan servicer's and assignee's alleged lack

6   of authority to foreclose on deed of trust where borrowers were in default under the note, absent

7   evidence that the original lender would have refrained from foreclosure).

8   "Prejudice is not presumed from 'mere irregularities' in the foreclosure process." *Fontenot v.*

9   *Wells Fargo Bank*, 198 Cal. App. 4th 256, 272 (2011). In *Fontenot*, the court explained that there is

10  no prejudice where a borrower is in default and the assignment of the loan does not interfere with

11  the borrower's ability to make payments:

12      As to plaintiff, an assignment merely substituted one creditor for another, without changing
        her obligations under the note. Plaintiff effectively concedes she was in default, and she does

13      not allege that the transfer to HSBC interfered in any manner with her payment of the note . .
        . nor that the original lender would have refrained from foreclosure under the circumstances

14      presented. If MERS indeed lacked authority to make the assignment, the true victim was not
        plaintiff but the original lender, which would have suffered the unauthorized loss of a $1

15      million promissory note.

16  *Id.* *Fontenot* was a post-foreclosure challenge.

17  Where foreclosure has not yet occurred, however, some courts find the threat of foreclosure to be

18  sufficient prejudice at the pleadings stage. "[T]he threat of foreclosure by the wrong party would

19  certainly be sufficient to constitute prejudice to the homeowner because there is no power of sale

20  without a valid notice of default." *Tamburri v. Suntrust Mortgage, Inc.*, No. C-11-2899 EMC, 2011

21  WL 6294472, at *14 (N.D. Cal. Dec. 15, 2011); *see Sacchi v. Mortgage Elec. Registration Sys., Inc.*,

22  No. CV 11-1658 AHM CWX, 2011 WL 2533029, at *9-10 (C.D. Cal. June 24, 2011) (allowing

23  wrongful foreclosure claim to go forward where foreclosure sale had not yet taken place).

24  Here, Plaintiff's action seeks to prevent the foreclosure from occurring. Under *Tamburri*,

25  arguably that is sufficient prejudice at this stage of the case. Nonetheless, the court need not reach

26  the issue because it dismisses the claims on other grounds.

27  **D.  Standing to Assert Claims for Breach of the Pooling and Servicing Agreement**

28  The next issue is whether Plaintiff has standing to the extent his claims are based on Defendants'

1   alleged noncompliance with the Trust's pooling and servicing agreement (the "PSA").  *See,*

2   *e.g.,* FAC ¶¶ 30-40, 46,  52-62 (claims one through four).

3       "Ninth Circuit district courts have come to different conclusions when analyzing a plaintiff's

4   right to challenge the securitization process . . . ." *Johnson v. HSBC Bank USA, N.A.,* No.

5   3:11–cv–2091–JM–WVG, 2012 WL 928433, at *2 (S.D. Cal. March 19, 2012) (collecting cases).

6   The majority position is that plaintiffs lack standing to challenge noncompliance with a pooling and

7   service agreement or other similar agreement unless they are parties to or third-party beneficiaries of

8   the agreement.  *See Aniel v. GMAC Mortg., LLC,* No. C 12–04201 SBA, 2012 WL 5389706, at *4

9   (N.D. Cal. Nov. 2, 2012) (collecting cases); *Almutarreb v. Bank of New York Trust Co., N.A.,* No.

10  C–12–3061 EMC, 2012 WL 4371410, at *2 (N.D. Cal. Sept. 24, 2012) (disagreeing with *Vogan* and

11  finding that because plaintiffs were neither parties nor third party beneficiaries to pooling and

12  service agreement, they lacked standing to challenge whether loan transfer occurred outside time

13  limits in agreement); *Madlaing v. JPMorgan Chase Bank, N.A.,* No. CV F 12–2069 LJO SMS, 2013

14  WL 2403379, at *8 (E.D. Cal. May 31, 2013) (plaintiff lacked standing to enforce pooling and

15  service agreement because he was neither party to nor intended third-party beneficiary of

16  agreement); *but see Vogan v. Wells Fargo Bank, N.A.,* No. 2:11–CV–02098–JAM–KJN, 2011 WL

17  5826016, at *7 (E.D. Cal. Nov. 17, 2011) (allowing UCL claim when plaintiffs alleged that

18  assignment was executed after the closing date of securities pool, "giving rise to a plausible

19  inference that at least some part of the recorded assignment was fabricated").  The court follows the

20  majority approach.

21      Plaintiff urges the court to follow *Glaski v. Bank of America, N.A.,* 218 Cal. App. 4th 1079

22  (2013), in which the court held that a borrower may have standing to challenge a foreclosure where

23  the note holder acquired the note from a party who had been assigned it in a void transaction (under

24  New York law). *Id.*  at 1095. There, the note was assigned to a securitized trust after the date that

25  the trust was closed for purposes of acquiring additional assets.  *Id.*  The trust in *Glaski* was formed

26  under New York law, which the court interpreted to confer standing in the specific situation.  *See id.*

27  at 1097.  The court noted that "some federal district courts sitting in California have rejected the

28  post-closing date theory of invalidity on the grounds that the borrower does not have standing to

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

1  challenge an assignment between two other parties." *Id.* at 1098. The court distinguished those

2  cases, however, because "they do not apply New York trust law to the operation of the securitized

3  trusts in question." *Id.* at 1098.

4   Every court in this district that has evaluated *Glaski* has found it unpersuasive. *See Zapata v.*

5  *Wells Fargo Bank, N.A.*, No. C 13-04288 WHA, 2013 WL 6491377, at *2 (N.D. Cal. Dec. 10, 2013)

6  (collecting cases). The court follows those cases and concludes that plaintiffs lack standing to

7  challenge noncompliance with a PSA in securitization unless they are parties to the PSA or third

8  party beneficiaries of the PSA. Accordingly, to the extent Plaintiff's claims are based on violation

9  of a PSA, the court dismisses them with leave to amend facts showing that Plaintiff is a party to or

10  third-party beneficiary of that PSA.

11   **E. MERS's Authority to Assign the Deed of Trust**

12   Several of Plaintiff's claims also are based upon the theory that MERS "could not have retained

13  the beneficial interest in the DOT after Aegis sold this interest to the securitized trust." *See, e.g.,*

14  FAC ¶ 28. Plaintiff in essence alleges that MERS had no authority to execute the assignment that

15  was recorded on July 25, 2011 and that therefore, the assignment recorded on July 25, 2011 from

16  MERS to U.S. Bank was invalid.

17   The argument that MERS had no authority is contradicted by the plain language of the DOT

18  attached to Plaintiff's complaint. The DOT states that MERS is "acting solely as a nominee for

19  Lender and Lender's successors and assigns. . . [and] is the beneficiary under this Security

20  Instrument." FAC Ex. A at 1. The DOT also grants "MERS (as nominee for Lender and Lender's

21  successors and assigns) . . . the right to: exercise any or all . . . interests, including . . . the right to

22  foreclose and sell the Property." *Id.* at 3. Numerous California courts have held that MERS, as the

23  nominee of the beneficiary, has the authority to foreclose and the authority to assign its beneficial

24  interest to a third party. *See Fontenot v. Wells Fargo Bank, N.A.*, 198 Cal. App. 4th 256, 270-71

25  (2011); *Gomes v. Countrywide Home Loans*, 192 Cal. App. 4th 1149, 1151 (2011); *see also Perry v.*

26  *Nat'l Default Servicing Corp.*, No. 10-CV-03167-LHK, 2010 WL 3325623, at *4 (N.D. Cal. Aug.

27  20, 2010) (plaintiffs unlikely to succeed on claim that assignment by MERS was invalid since Deed

28  of Trust stated that MERS had right to act as nominee, including right to assign).

**F.  The Tender Rule**

The next issue is whether Plaintiff has standing to challenge either the foreclosure proceedings or the propriety of the recorded documents because he has not alleged that he is willing and able to tender the full amount that he owes.  Motion at 14-15.  Generally, the "tender rule" applies to claims to set aside a trustee's sale for procedural irregularities or alleged deficiencies in the sale notice. *Robinson v. Bank of Am.*, No. 12–CV–00494–RMW, 2012 WL 1932842, at *3 (N.D. Cal. May 29, 2012); *Tamburri*, 2011 WL 6294472, at *3.  "[T]he rationale behind the rule is that if plaintiffs could not have redeemed the property had the sale procedures been proper, any irregularities in the sale did not result in damages to the plaintiffs." *Tamburri*, 2011 WL 6294472, at *3 (quoting *Cohn v. Bank of Am.*, No. 2:10–cv–00865 MCE KJN PS, 2011 WL 98840, at *9 (E.D. Cal. Jan. 12, 2011)).

The rule is not absolute, though.  Indeed, "[t]ender may not be required where it would be inequitable to do so."  *See Onofrio v. Rice*, 55 Cal. App. 4th 413, 424 (Cal. Ct. App. 1997) (person who purchased the plaintiff's property at the foreclosure sale was the plaintiff's own foreclosure consultant who represented that he would assist the plaintiff in avoiding foreclosure).  In addition, several federal courts sitting in California have held that the tender rule applies only in cases seeking to set aside a completed sale, rather than an action to prevent a pending sale.  *See*, *e.g.*, *Robinson*, 2012 WL 1932842, at *4; *Vissuet v. Indymac Mortgage Serv.*, No. 09–CV–2321–IEG (CAB), 2010 WL 1031013, at *2 (S.D. Cal. Mar. 19, 2010); *Giannini v. Am. Home Mortgage Servicing, Inc.*, No. 11–04489 THE, 2012 WL 298254, at *3 (N.D. Cal. Feb. 1, 2012).  Moreover, tender is not required where a plaintiff alleges a violation of California Civil Code § 2923.5, because, as one California appellate court has stated, "[t]he whole point of section 2923.5 is to create a new, even if limited right, to be contacted about the possibility of alternatives to full payment of arrearages.  It would be contradictory to thwart the very operation of the statute if enforcement were predicated on full tender."  *Mabry v. Superior Court*, 185 Cal. App. 4th 208, 225 (Cal. Ct. App. 2010); *see Perez v. Am. Home Mortgage Servicing, Inc.*, No. C 12–00932 WHA, 2012 WL 1413300, at *5 (N.D. Cal. Apr. 23, 2012) ("Contrary to defendants' contention, a borrower need not tender the full amount of indebtedness to be entitled to her rights under Section 2923.5."); *Valdez v. JPMorgan Chase Bank,*

*N.A.*, No. EDCV 11–0935 DOC (DTBx), 2012 WL 995278, at *5 n.5 (C.D. Cal. Mar. 20, 2012) (citing *Mabry*); *Luciw v. Bank of Am., N.A.*,No. 5:10–cv–5969–JF (HRL), 2011 WL 1740114, at *2 (N.D. Cal. May 5, 2011).  Finally, where a plaintiff alleges that the entity lacked authority to foreclose on the property, the foreclosure sale would be void.  *See Dimock v. Emerald Properties LLC*, 81 Cal. App. 4th 868, 876 (2000).  And "where a sale is void, rather than simply voidable, tender is not required." *Tamburri*, 2011 WL 6294472, at *4 (citing Miller & Starr California Real Estate 3d § 212); *see also Martinez v. Am.'s Wholesale Lender*, 446 F. App'x 940, 943 (9th Cir. 2011) ("The tender rule does not apply to a void, as opposed to a voidable, foreclosure sale."); *Dimock*, 81 Cal. App. 4th at 878.

Here, Plaintiff asserts that Defendants do not have authority to foreclose and that any foreclosure sale would be void.  Accordingly, he does not need to allege tender.  *See Avila v. Wells Fargo Bank*, No. C 12–01237 WHA, 2012 WL 2953117, at *15 (N.D. Cal. July 19, 2012) ("By alleging that the purported trustee, NDex West, was not properly substituted as trustee, had no interest in the subject property, and thus was not authorized to initiate a non-judicial foreclosure when it recorded the notice of default, plaintiff alleges that the foreclosure sale was void.  As such, the tender rule does not apply.") (internal citation omitted); *Vogan v. Wells Fargo Bank*, No. 2:11-CV-02098-JAM-KJN, 2011 WL 5826016, at *7-8 (E.D. Cal. Nov. 17, 2011) ("The Court holds that the tender requirement does not apply to this case because Plaintiffs are challenging the beneficial interest held by U .S. Bank in the deed of trust, not the procedural sufficiency of the foreclosure itself."); *see also In re Salazar*, 448 B.R. 814, 819 (S.D. Cal. 2011) ("If U.S. Bank was not authorized to foreclose the [Deed of Trust] under Civil Code section 2932.5, the foreclosure sale may be void, and Salazar would not need to tender the full amount of the Loan to set aside the sale.").

## IV.  THE CLAIMS IN THE FIRST AMENDED COMPLAINT

### A.  Breach of Express Agreements

Plaintiff's first claim is for breach of express agreements, specifically the Deed of Trust and the Trust's Pooling and Servicing Agreement.  *See FAC ¶¶ 22-32.*

To state a claim for breach of contract, a plaintiff must show the following:  (1) a contract existed; (2) the plaintiff performed his duties or was excused from performing his duties under the

1   contract; (3) the defendant breached the contract; and (4) the plaintiff suffered damages as a result of

2   that breach.  *See First Commercial Mortgage Co. v. Reece*, 89 Cal. App. 4th 731, 745 (2001).

3   "Facts alleging a breach, like all essential elements of a breach of contract cause of action, must be

4   pleaded with specificity."  *See Levy v. State Farm Mut. Auto. Ins. Co.*, 150 Cal. App. 4th 1, 5 (2007).

5   "Resolution of contractual claims on a motion to dismiss is proper if the terms of the contract are

6   unambiguous."  *Monaco v. Bear Sterns Residential Mortg. Corp.*, 554 F. Supp. 2d 1034, 1040 (C.D.

7   Cal. 2008) (citing *Bedrosian v. Tenet Healthcare Corp.*, 208 F.3d 220 (9th Cir. 2000); *Westlands

8   Water Dist. v. U.S. Dep't of Interior*, 850 F. Supp. 1388, 1408 (E.D. Cal. 1994)).   "A contract

9   provision will be considered ambiguous when it is capable of two or more reasonable

10   interpretations."  *Id*. (citing *Bay Cities Paving & Grading, Inc. v. Lawyers' Mut. Ins. Co.*, 5 Cal. 4th

11   854, 867 (1993)).  "An ambiguity may appear on the face of an agreement or extrinsic evidence may

12   reveal a latent ambiguity."  *Fremont Indem. Co. v. Fremont Gen. Corp.*, 148 Cal. App. 4th 97, 114

13   (2007) (citation omitted).

14   Plaintiff's claim for breach of the DOT is that under the DOT, the lender or trustee is required to

15   record notices of default, substitutions of trustee, and assignments.  *See* FAC ¶¶ 24-28.  Defendants

16   breached these provisions by recording documents when they were not authorized to do so.  *Id.*  For

17   example, Plaintiff alleges that Defendants violated the DOT because they are "not in fact the true

18   Lender or Trustee" but still filed a notice of default.  FAC ¶ 26.

19   These bare allegations are not "a short and plain statement of the claim showing that the pleader

20   is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  The allegations are that Defendants were not parties to

21   the contract, and then the issue is, how could they breach it?  Also, to the extent Plaintiff's claim is

22   based on an alleged breach of the Trust's PSA, he lacks standing, as discussed above.

23   The court dismisses the breach of contract claims without prejudice.

24   **B.  Breach of Implied Contract**

25   Plaintiff's second claim is for breach of implied agreement.  *See* FAC ¶¶ 33-40.  Under

26   California law, "[a] contract is either express or implied."  *Retired Emps. Ass'n of Orange Cnty.,

27   Inc. v. County of Orange,* 52 Cal. 4th 1171, 1178 (2011) (citing Cal. Civ. Code § 1619).  "The

28   existence and terms of an express contract are stated in words."  *Id*. (citing Cal. Civ. Code § 1620).

1   "The existence and terms of an implied contract are manifested by conduct." *Id.* (citing Cal. Civ.

2   Code § 1621). "The distinction reflects no difference in legal effect but merely in the mode of

3   manifesting assent." *Id.* "Accordingly, a contract implied in fact consists of obligations arising

4   from a mutual agreement and intent to promise where the agreement and promise have not been

5   expressed in words." *Id.* (internal quotation and citation omitted). The elements of a cause of action

6   for breach of an express or implied contract are the same. *See Gomez v. Lincare, Inc.,* 173 Cal. App.

7   4th 508, 525 (2009). The elements are: (1) the existence of the contract; (2) performance by the

8   plaintiff or excuse for nonperformance; (3) breach by the defendant; and (4) damages. *First*

9   *Commercial Mortg. Co. v. Reece,* 89 Cal. App. 4th 731, 745 (2001).

10       The FAC fails to allege any elements of the claim. Plaintiff claims that an indemnification

11   agreement in the Aegis 2005-3 Trust PSA creates an implied contract with him that Defendants

12   breached by improperly invoking the power of sale and failing to record the DOT's assignment.

13   Plaintiff alleges he was damaged "in that Plaintiff risks losing title to his Property if the power of

14   sale clause is enforceable." *Id.* ¶ 40. It is not obvious how any of this constitutes a contract, what its

15   terms might be, or how Defendants could have breached it. The court dismisses the claim without

16   prejudice.

17   **C.  Slander of Title**

18       Plaintiff next alleges slander of title in connection with the NODs, NOTS, and the substitution of

19   trustee. *See* FAC ¶¶ 41-50.

20       Slander of title "occurs when a person, without privilege to do so, publishes a false statement

21   that disparages title to property and causes pecuniary loss." *Truck Ins. Exchange v. Bennett,* 53 Cal.

22   App. 4th 75, 85 (1997). The required elements of a claim for slander of title are "(1) a publication,

23   (2) without privilege or justification, (3) falsity, and (4) direct pecuniary loss." *Sumner Hill*

24   *Homeowners' Ass'n, Inc. v. Rio Mesa Holdings, LLC*, 205 Cal. App. 4th 999, 1030 (2012).

25       A "privileged" publication is one made "[i]n a communication, without malice, to a person

26   interested therein [ ] by one who is also interested." Cal. Civ. Code § 47(c)(1). Nonjudicial

27   foreclosure documents are subject to this privilege. *See* Cal. Civ. Code § 2924(d); *see also Ogilvie*

28   *v. Select Portfolio Serv'g,* No. 12–CV–001654–DMR, 2012 WL 3010986, at *3 (N.D. Cal. July 23,

1    2012) (collecting cases).  Malice is defined as actual malice, meaning "that the publication was

2    motivated by hatred or ill will towards the plaintiff or by a showing that the defendant lacked

3    reasonable grounds for belief in the truth of the publication and therefore acted in reckless disregard

4    of the plaintiff's rights."  *Kachlon,* 168 Cal. App. 4th at 336.  The statutory privilege for trustees of

5    deeds of trust discussed above, applies to slander of title claims.  *See* Cal. Civ. Code § 2924(b).

6        A "direct pecuniary loss" is restricted to:

7        (a) the pecuniary loss that results directly and immediately from the effect of the conduct of
         third persons, including impairment of vendibility or value caused by disparagement, and

8
9        (b) the expense of measures reasonably necessary to counteract the publication, including
         litigation to remove the doubt cast upon vendibility or value by disparagement.

10   *Ryan v. Editions Ltd. W., Inc.,* No. C–06–4812–PVT, 2007 WL 4577867, at *12 (N.D. Cal. Dec. 27,

11   2007) (quoting *Appel v. Burman,* 159 Cal. App. 3d 1209, 1215 (1984); Rest.3d Torts § 633).

12   Pecuniary loss may be comprised of attorney's fees incurred in quieting title to the allegedly

13   slandered property, but not attorney's fees incurred in the slander of title action itself.  *Id.* ("In an

14   action for disparagement of title the plaintiff may recover as damages the expense of legal

15   proceedings necessary *to remove a cloud* on the plaintiff's title.  While attorney's fees are allowed

16   for the fees incurred *in clearing title,* fees incurred in prosecuting a slander of title action are not.")

17   (citation omitted) (emphasis added).

18       Plaintiff's slander of title claim is based on the filing of three allegedly false documents:  the

19   June 23, 2011 Notice of Default, the Assignment that was recorded on July 25, 2011, and the July 2,

20   2012 Substitution of Trustee.  *See* FAC ¶¶ 41-50.

21       As to the June 23, 2011 NOD, Plaintiff alleges it is false because the signatory "had no authority

22   to sign on behalf of the true beneficiaries."  FAC ¶ 42.  This allegation does not support a slander of

23   title claim because Plaintiff can show no damages by the allegedly false signature.  *See Elliott v.*

24   *Mortgage Elec. Registration Sys., Inc.*, No. 12-CV-4370 YGR, 2013 WL 1820904, at *2 (N.D. Cal.

25   Apr. 30, 2013) (allegedly "robo-signed" documents did not affect the validity of the foreclosure

26   process in light of plaintiff's default and, therefore, did not support slander of title claim and

27   collecting cases).  Furthermore, the June 23, 2011 NOD was rescinded on September 7, 2011.  *See*

28   RJN Ex. 5.  Plaintiff fails to connect the rescinded NOD to any pecuniary loss.

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

UNITED STATES DISTRICT COURT
For the Northern District of California

1   Plaintiff's remaining allegations are either based on his challenge to the Trust's PSA, FAC ¶¶ 44,

2   46-49, or based on his argument that MERS cannot assign the beneficial interest, FAC ¶¶ 45, 49.

3   These theories fail to show that a document is false for the reasons discussed above.

4   **D. Wrongful Foreclosure**

5   Plaintiff's next claim is for wrongful foreclosure. *See* FAC ¶¶ 51-62.

6   Under California law, "[t]he elements of an equitable cause of action to set aside a foreclosure

7   sale are as follows: (1) the trustee or mortgagee caused an illegal, fraudulent, or willfully oppressive

8   sale of real property pursuant to a power of sale in a mortgage or deed of trust; (2) the party

9   attacking the sale (usually but not always the trustor or mortgagor) was prejudiced or harmed; and

10  (3) in cases where the trustor or mortgagor challenges the sale, the trustor or mortgagor tendered the

11  amount of the secured indebtedness or was excused from tendering." *Lona v. Citibank, N.A.,* 202

12  Cal. App. 4th 89, 104 (2011). "Justifications for setting aside a trustee's sale . . . which satisfy the

13  first element, include the trustee's or the beneficiary's failure to comply with the statutory

14  procedural requirements for the notice or conduct of the sale." *Id.* at 104. "Other grounds include

15  proof that: (1) the trustee did not have the power to foreclose, (2) the trustor was not in default, no

16  breach had occurred, or the lender had waived the breach, or (3) the deed of trust was void." *Id.*

17  Plaintiff bases his wrongful foreclosure claim on his theory that the late transfer to the Trust

18  violated the PSA and that this rendered invalid the subsequently-recorded foreclosure documents.

19  FAC ¶¶ 51-59. As discussed above, however, Plaintiff fails to establish that he has standing to sue

20  based on the alleged breach of the PSA. Also, this theory is not with sufficient clarity for the court

21  to follow the logic and appears to be contradicted by other allegations in the complaint. The court

22  dismisses the claim with leave to amend.

23  **E. California Civil Code § 2923.5**

24  Plaintiff's fifth claim alleges that Defendants violated California Civil Code section 2923.5 by

25  initiating a non-judicial foreclosure proceeding on his home without fulfilling the statutory

26  prerequisites. *See* FAC ¶¶ 63-65.

27  Section 2923.5 obligates a party to contact a borrower by phone or in person at least 30 days

28  before filing a notice of default in order to "explore options for the borrower to avoid foreclosure."

1   Cal. Civ. Code § 2923.5(a)(2).  The statute also requires a notice of default to include "a declaration

2   that the mortgagee, beneficiary, or authorized agent has contacted the borrower" or "has tried with

3   due diligence to contact the borrower as required by this section."  Cal. Civ. Code § 2923.5(b).  "The

4   right conferred by section 2923.5 is a right to be contacted to 'assess' and 'explore' alternatives to

5   foreclosure prior to a notice of default."  *Mabry v. Superior Court*, 185 Cal. App. 4th 208, 225

6   (2010).  "Any 'assessment' must necessarily be simple – something on the order of, 'why can't you

7   make your payments?' . . . Exploration must necessarily be limited to merely telling the borrower

8   the traditional ways that foreclosure can be avoided . . , as distinct from requiring the lender to

9   engage in a process that would be functionally indistinguishable from taking a loan application in

10  the first place."  *Id.* at 232.  "The only remedy provided [for a violation of Section 2923.5] is a

11  postponement of the sale before it happens."  *Id.* at 235 (emphasis in original).

12       Plaintiff alleges that Defendants violated section 2923.5 in two ways.  First, they failed to

13  contact him, in person or by telephone, at least 30 days prior to recording the March 9, 2012 NOD,

14  and failed to try with due diligence to contact him.  FAC ¶ 64.  Second, they failed to attach a

15  declaration to the NOD or include a statement of compliance within it.  *Id.*

16       Defendants point out that Plaintiff's claim is contradicted by other allegations in the FAC.

17  Motion at 18-19.  In the allegations pertaining to the FDCPA claim discussed below, Plaintiff

18  alleges that "Defendants violated the FDCPA with actions pertaining to enforcement of the Note and

19  Plaintiff's DOT with challenged debt collection conduct *including Section 2923.5 compliance* which

20  failed to include the FDCPA Mini Miranda Warning and FDCPA 30-day validation notice

21  requirements."  FAC ¶ 98; *see also* ¶ 99 (referring to the contents of "Defendants [*sic*]

22  correspondence or verbal communications regarding Section 2923.5 compliance"); ¶ 101 (same).  In

23  his opposition brief, Plaintiff argues that the "correspondence or verbal communications" in question

24  is the March 9, 2012 NOD.  Opp'n at 24.

25       The written notation on the NOD is not obviously correspondence or verbal communication, and

26  Plaintiff contradicts his own allegations.  The court grants the motion to dismiss.

27  **F. TILA**

28       In his sixth claim, Plaintiff alleges that Defendants violated TILA by:

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

UNITED STATES DISTRICT COURT
For the Northern District of California

1
2
3
4

> failing to provide Plaintiff with accurate material disclosures required under TILA and not taking into account the intent of the State Legislature in approving this statute which was to fully inform home buyers of the pros and cons of adjustable rate mortgages in a language (both written and spoken) that they can understand and comprehend; and advise them to compare similar loan products with other lenders. It also requires the lender to offer other loan products that might be more advantageous for the borrower under the same qualifying matrix.

5   FAC ¶ 67. He also argues that Defendants did not notify him within 30 days after transferring the

6   loan. *Id.* ¶ 68. Defendants respond that TILA's one-year statute of limitation bars the claim and it is

7   insufficiently pleaded. Motion at 19-20.

8       TILA aims to "avoid the uninformed use of credit." 15 U.S.C. § 1601(a). It "has the broad

9   purpose of promoting 'the informed use of credit' by assuring 'meaningful disclosure of credit

10  terms' to consumers." *Ford Motor Credit Co. v. Milhollin*, 444 U.S. 555, 559 (1980) (quoting 15

11  U.S.C. § 1601). It "requires creditors to provide borrowers with clear and accurate disclosures of

12  terms dealing with things like finance charges, annual percentage rates of interest, and the

13  borrower's rights." *Beach v. Ocwen Fed. Bank*, 523 U.S. 410, 412 (1998) (citing 15 U.S.C. §§

14  1631-32, 1635 & 1638). If a lender fails to disclose required material information, a borrower has a

15  right to monetary damages within one year of consummation of the loan. 15 U.S.C. § 1640(e); *see*

16  *King v. California*, 784 F.2d 910, 915 (1986). Generally, inaccuracies in disclosures are evident

17  upon reviewing the disclosure documents themselves, and the statute of limitations begins to run the

18  day the documents are executed. *See Meyer v. Ameriquest Mortgage Co.*, 342 F.3d 899, 902 (9th

19  Cir. 2003).

20      Here, the loan transaction was in 2005, and the failure to provide information at origination was

21  time-barred one year after that. As to the failure to provide disclosures within 30 days of a transfer

22  of interest, the last transfer was recorded on July 25, 2011. Any disclosures were due on August 24,

23  2011 and the claim would expire on August 24, 2012. The lawsuit was filed in November 2013.

24      Plaintiff nonetheless argues that equitable tolling applies. For TILA damages claims,[8] "the

25

_____

26      [8] A borrower also has a right to rescind within three years of consummation of the loan. 15

27  U.S.C. § 1635(f); *see King v. California*, 784 F.2d 910, 913 (9th Cir. 1986). The three-year
    limitations period for a TILA rescission claim is not subject to equitable tolling. *See Beach v.*

28  *Ocwen Fed. Bank*, 523 U.S. 410, 412 (1998). In any case, this does not apply here as Plaintiff seeks
    only damages from First Bank.

1  doctrine of equitable tolling may, in appropriate circumstances, suspend the limitations period until

2  the borrower discovers or had reasonable opportunity to discover the fraud or nondisclosures that

3  form the basis of the TILA action." *King,* 784 F.2d 910, 915 (9th Cir. 1986).  In determining

4  justifiable application of the equitable tolling doctrine, a court "focuses on excusable delay by the

5  plaintiff." *Johnson v. Henderson*, 314 F.3d 409, 414 (9th Cir. 2002).  Excusable delay by the

6  plaintiff is defined as whether a reasonable plaintiff would not have known of the existence for a

7  possible claim within the limitations period.  *Lukovsky v. City & Cnty. of San Francisco*, 535 F.3d

8  1044, 1051 (9th Cir. 2008).  To establish excusable delay, the plaintiff must show "fraudulent

9  conduct by the defendant resulting in concealment of the operative facts, failure of the plaintiff to

10  discover the operative facts that are the basis of its cause of action within the limitations period, and

11  due diligence by the plaintiff until discovery of those facts." *Fed. Elec. Comm'n v. Williams*, 104

12  F.3d 237, 240–41 (9th Cir. 1996).

13      As to the disclosures at origination, those are evident on reviewing the disclosure documents.  As

14  to the failure to provide disclosures, Plaintiff alleges the Defendants' fraud conclusorily, *see* FAC

15  ¶ 77, and provides no information establishing excusable delay.  The court grants the motion to

16  dismiss the TILA claim with leave to amend.

17  **G.  RESPA**

18      In the seventh cause of action, Plaintiff alleges U.S. Bank, Ocwen, and Western violated

19  RESPA, 12 U.S.C. § 2605, by failing to respond to Plaintiff's November 6, 2013 letter.[9]  Defendants

20  argue that the claim is insufficiently pleaded.  The court agrees.

21      RESPA provides plaintiffs with a private right of action for three types of wrongful acts: "(1)

22  payment of a kickback and unearned fees for real estate settlement services, 12 U.S.C. § 2607(a),

23  (b); (2) requiring a buyer to use a title insurer selected by a seller, 12 U.S.C. § 2608(b); and (3) the

24  failure by a loan servicer to give proper notice of a transfer of servicing rights or to respond to a

25  qualified written request for information about a loan, 12 U.S.C. § 2605(f)." *Choudhuri v. Wells*

26

27      [9]  While paragraphs 78-82 of the FAC appear to allege claims related to the November 6,
2013 letter, paragraphs 83-91 contain allegations and legal theories related to Plaintiff's position that

28  the assignment to U.S Bank was invalid.  In the context of a RESPA claim, these allegations are
unintelligible.  Accordingly, to the extent they purport to state a claim, the court dismisses it.

UNITED STATES DISTRICT COURT
For the Northern District of California

*Fargo Bank, N.A.*, No. C 11-00518 SBA, 2011 WL 5079480, at *8 (N.D. Cal. Oct. 25, 2011) (citing *Patague v. Wells Fargo Bank, N.A.*, No. C 10-03460 SBA, 2010 WL 4695480, at *3 (N.D. Cal. Nov. 8, 2010)).

Plaintiff's claim concerns the third type of wrongful act under RESPA, which provides that a loan servicer of a federally related mortgage loan has a duty to confirm receipt of a Qualified Written Request ("QWR") and respond. *See* 12 U.S.C. §§ 2605(e)(1) and (2).

Plaintiff alleges that on November 6, 2013, he submitted a QWR to U.S. Bank, Ocwen, and Western seeking resolution of "loan servicing disputes" and asking for the "name and address of Note holder." FAC ¶¶ 79-80. U.S. Bank, Ocwen, and Western failed to respond within 60 days of receiving the QWR, thus violating 12 U.S.C. § 2605(e)(2). *Id.* ¶¶ 81-82.

Plaintiff's claim fails for several reasons.

First, he does not allege that U.S. Bank or Western are loan servicers subject to RESPA. Accordingly, the RESPA claim fails as to them.

Second, he fails to plausibly allege that his letter was a QWR. RESPA defines a QWR as a written request from the borrower to the loan servicer "for information relating to the servicing of [a] loan" that "(i) includes . . . the name and account of the borrower; and (ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower." 12 U.S.C. § 2605(e)(1)(B). Here, Plaintiff provides no detail about the contents of his QWR and does not allege that he included a statement of the reasons he believed his account was in error. Absent factual allegations that the purported QWR met the statutory requirements, the RESPA claim does not survive.

Third, even if the QWR allegations were sufficient, Plaintiff fails to plead damages. In order to avoid dismissal of a RESPA claim, the plaintiff must plead specific facts showing that he suffered "pecuniary damages." *Allen v. United Fin. Mortg. Corp.*, 660 F. Supp. 2d 1089, 1097 (N.D. Cal. 2009). Moreover any injury must be "a result of the failure" to comply with RESPA. 12 U.S.C. § 2605(f)(1)(A). This pleading requirement limits RESPA claims to circumstances in which a plaintiff can allege specific facts to show causation – "actual damages to the borrower as a result of

UNITED STATES DISTRICT COURT
For the Northern District of California

1   the failure [to comply with RESPA requirements]." *Lal v. Am. Home Servicing, Inc.*, 680 F. Supp.

2   2d 1218, 1223 (E.D. Cal. 2010); *see also Tamburri v. Suntrust Mortg., Inc.,* 875 F. Supp. 2d 1009,

3   1014 (N.D. Cal. 2012); *Jenkins,* 216 Cal. App. 4th at 531-32.

4      As Defendants argue, the RESPA claim fails because the FAC alleges no facts showing that

5   Plaintiff suffered "actual damages" as a result of Defendants' failure to respond to the purported

6   QWR.  By the time Plaintiff sent the letter on November 6, 2013, he had long stopped making loan

7   payments, and Notices of Default and Notices of Trustee's Sale had already been recorded.  Thus,

8   Plaintiff cannot claim (and does not allege) that he failed to make the payments because of issues

9   with the servicing of the loan or that he would have made future payments if Defendants had

10   responded to the alleged QWR.  In fact, Plaintiff sent his QWR the same day he filed this action

11   (possibly even after he filed it).  *See* Complaint, ECF No. 1-1 at 4 (filed 11/6/2013).  This appears to

12   be a tactic of Plaintiff's counsel.  *See Rivac v. Ndex W. LLC*, No. C 13-1417 PJH, 2013 WL

13   6662762, at *12 (N.D. Cal. Dec. 17, 2013) (noting this tactic and denying RESPA claim with

14   prejudice).[10]  Accordingly, Plaintiff cannot claim to have suffered damages based on the failure to

15   respond to his QWR.  The court grants the motion to dismiss the claim without prejudice.

16   **H.  Fair Debt Collection Practices Act**

17      Plaintiff alleges that Defendants are debt collectors within the meaning of the FDCPA and that

18   they violated the FDCPA by failing to provide the FDCPA "Mini–Miranda" warning (notice that

19   they are "debt collectors" and are attempting to collect on a debt) on the Notice of Default and

20   comply with the 30-day validation notice requirements.  *See* FAC ¶¶ 96-105.

21      To state a claim under the FDCPA, "a plaintiff must allege facts that establish the following: (1)

22   the plaintiff has been the object of collection activity arising from a consumer debt; (2) the

23   defendant attempting to collect the debt qualifies as a 'debt collector' under the FDCPA; and (3) the

24   defendant has engaged in a prohibited act or has failed to perform a requirement imposed by the

25   FDCPA."  *Adesokan v. U.S. Bank, N.A.*, No. 11-cv-01236-LJO-SKO, 2011 WL 5341178, at *4 (E.D.

26

27   _____

28      [10]  In his opposition, Plaintiff does not respond to Defendants' arguments and instead appears
   to argue conclusorily that Defendants' alleged violation of the PSA somehow constitutes a RESPA
   violation.  *See* Opp'n at 26-27.

1   Cal. Oct. 31, 2011) (citing *Frazier v. Absolute Collection Serv., Inc.*, 767 F. Supp. 2d 1354, 1363

2   (N.D. Ga. 2011).  Under the FDCPA, a "debt collector" is defined as "any person . . . in any business

3   the principal purpose of which is the collection of any debts, or who regularly collects or attempts to

4   collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C.

5   § 1692a.  The term, however, "does not include the consumer's creditors, a mortgage servicing

6   company, or an assignee of a debt, as long as the debt was not in default at the time it was assigned."

7   *Jara v. Aurora Loan Servs.*, 852 F. Supp. 2d 1204, 1211 (N.D. Cal. 2012) (quoting *Perry v. Stewart*

8   *Title Co.*, 756 F.2d 1197, 1208 (5th Cir. 1985) (quotation marks omitted)).

9       Defendants argue that they are exempt from the FDCPA because they are not debt collectors

10   within the meaning of the FDCPA.  Motion at 22.  The court agrees.  Plaintiff's FDCPA claim is

11   based on the March 9, 2012 NOD, which states that Plaintiff defaulted on his mortgage on October

12   1, 2011.  *See* FAC ¶ 99 (alleging FDCPA violation), Ex. C at 2, ECF No. 16-6 at 2 (3/9/2012 NOD

13   page showing date of default); Opp'n at 24 (confirming that Plaintiff's FDCPA claim is based on the

14   3/9/2012 NOD).  All of the assignments and transfers alleged in the FAC took place either before

15   Plaintiff defaulted or after the NOD was recorded.  *See* FAC ¶¶ 9-21.

16       Plaintiff does not substantively dispute Defendants' argument.  Instead, he cites to an

17   unpublished Eleventh Circuit opinion without providing any analysis.  *See* Opp'n at 24 (citing

18   *Birster v. Am. Home Mortg. Servicing, Inc.*, No. 11-13574, 2012 WL 2913786 (11th Cir. July 18,

19   2012)).  To the extent *Birster* is relevant as persuasive precedent, it is distinguishable because it

20   involved more traditional attempts to collect on a debt.  There, American Home Mortgage allegedly

21   "engaged in a relentless assault of harassing phone calls and home inspections in an attempt to

22   collect the mortgage debt," and mailed letters that threatened foreclosure unless the homeowner

23   cured the default.  *Id.* at *1.  The Eleventh Circuit found this evidence insufficient to determine

24   whether the defendant was a debt collector or was engaging in debt collection activity and reversed

25   the summary judgment entered against the homeowners.  *Id.* at *4 (stating that "an entity can both

26   enforce a security interest *and* collect on a debt").  In contrast, Plaintiff pleads no facts that would

27   allow the court to find that any Defendant was a debt collector within the meaning of the FDCPA.

28       In any event, Plaintiff's FDCPA claim is barred by the statute of limitations.  Claims under the

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

1  FDCPA are subject to a one-year statute of limitations.  15 U.S.C. § 1692k(d).[11]  Plaintiff's FDCPA

2  claim is based on the most recent NOD, which was recorded on March 9, 2012.  *See* FAC ¶ 99

3  (alleging FDCPA violation based on "Defendants['] correspondence or verbal communications

4  regarding Section 2923.5 compliance"); Opp'n at 24 (stating that "Defendants['] correspondence or

5  verbal communications regarding section 2923.5 compliance" refers to the March 9, 2012 NOD).

6  Plaintiff did not file suit until November 22, 2013.  *See* ECF No. 1.  Defendants raise the statute of

7  limitations argument in their motion to dismiss.  *See* Motion at 23.  Plaintiff did not provide any

8  reasons why the one-year limitations period does not apply to him.  *See* Opp'n at 24-25.  The court

9  dismisses Plaintiff's FDCPA claim.

10  **I. RICO**

11  　　Plaintiff alleges that Defendants violated the Racketeer Influenced and Corrupt Organization

12  ("RICO") Act by concealing that the loans were securitized, hiding the terms of the securitization

13  agreements, sending fraudulent assignments in foreclosure cases, making misrepresentations,

14  concealing the parties' lack of standing, and other similar broad allegations against the Defendants

15  and the mortgage industry in general.  *See* FAC ¶¶ 106-26.  These claims have been brought by

16  Plaintiffs' counsel in nearly identical form in other cases in this district, and the courts there have

17  dismissed them with prejudice.  *See, e.g., Bergman v. Bank of Am.*, No. C 13-00741 JCS, 2013 WL

18  5863057, *29-30 (N.D. Cal. Oct. 23, 2013) (collecting cases and dismissing nearly-identical claims

19  with prejudice).  As in *Bergman*, Plaintiff's RICO claim is not plausible:

20  　　[T]he Court adopts the reasoning of previous cases and finds that Plaintiffs' claim here is "far
21  　　from plausible." *See Zacharias* [v. JPMorgan Chase Bank, N.A.], No. 12-06525 SC], 2013
　　WL 588757, at *3 [(N.D. Cal. Feb. 13, 2013)]. Plaintiffs "put forward no facts supporting
22  　　[their] 'sweeping contention that Defendants defrauded everyone' by bringing suit on behalf
　　of entities without standing to sue." *See Quach* [v. Bank of America, N.A., No. 5:13-CV-
23  　　00467-EJD], 2013 WL 3788827, at *3 [N.D. Cal. July 17, 2013] (quoting *Zacharias,* 2013
　　WL 588757, at *3). They fail to allege facts of an ongoing organization to support the
24  　　contention that Defendants function as an "enterprise." *See Madlaing* [v. JPMorgan Chase

25  　　　[11] This provision provides:  "An action to enforce any liability created by this subchapter

26  may be brought in any appropriate United States district court without regard to the amount in

27  controversy, or in any other court of competent jurisdiction, within one year from the date on which

28  the violation occurs."  15 U.S.C. § 1692k(d).

UNITED STATES DISTRICT COURT
For the Northern District of California

1   *Bank, N.A.*, No. CV F 12-2069 JLO SMS], 2013 WL 2403379, at *22 (E.D. Cal. May 31,
2   2013). They fail to plausibly allege racketeering activities that are distinct from the alleged
    enterprise. *See Zacharias,* 2013 WL 588757, at *3. They fail to allege that the loan
3   constitutes an unlawful debt, *i.e.,* an unlawful gambling debt. *See Madlaing,* 2013 WL
    2403379, at *23; 18 U.S.C. § 1961(6) (defining "unlawful debt"). They fail to identify
4   authority to support their contention that Defendants had a duty to make disclosures
    regarding securitization. *See Gilbert* [*v. Chase Home Finance, LLC*, No. 1:13-cv-265 AWI
5   SKO], 2013 WL 2318890, at *10 [(E.D. Cal. May 28, 2013)]. Moreover, securitization is
    neither a crime nor racketeering activity. *See Rivac* [*v. Ndex West LLC*, No. C 13-1417 PJH],
    2013 WL 3476659, at *8 [(N.D. Cal. July 10, 2013)].

6

7   Furthermore, Plaintiffs fail to meet the Rule 9(b) pleading standard because they have not
    provided any specific allegations identifying which Defendant took which actions, nor have
8   they made any specific allegations about the times, places, and specific content of the
    activities. For example, Plaintiffs appear to allege that Defendants committed the predicate
9   acts of mail fraud in furtherance of the "enterprise." *See* Compl. at ¶ 79. But they do not
    "state the time, place, and specific content" of any of the alleged mailings, nor do they state
10  "the identities of the parties to the misrepresentation." *See Edwards,* 356 F.3d at 1066;
    *Gilbert,* 2013 WL 2318890, at *10.

11  *Bergman*, 2013 WL 5863057, at *30.  The court dismisses the RICO claims with prejudice.

12  **J.  UNFAIR COMPETITION LAW**

13      Plaintiff's final claim is for violation of California's Unfair Competition Law (the "UCL").  The

14  UCL prohibits any "unlawful, unfair or fraudulent business act or practice."  "Since section 17200 is

15  [written] in the disjunctive, it establishes three separate types of unfair competition.  The statute

16  prohibits practices that are either 'unfair' or 'unlawful,' or 'fraudulent.'"  *Pastoria v. Nationwide*

17  *Ins.*, 112 Cal. App. 4th 1490, 1496 (2003); *see also Cel-Tech Communications, Inc. v. Los Angeles*

18  *Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999).  To support a claim for a violation of the UCL, a

19  plaintiff cannot simply rely on general common law principles.  *Textron Fin. Corp. v. Nat'l Union*

20  *Fire Ins. Co. of Pittsburgh*, 118 Cal. App. 4th 1061, 1072 (2004).

21      Any individual who has "has suffered injury in fact and has lost money or property as a result of

22  the unfair competition" may initiate suit.  Cal. Bus. & Prof. Code § 17204.  To have standing, a

23  plaintiff must sufficiently allege that (1) he has "lost 'money or property' sufficient to constitute an

24  'injury in fact' under Article III of the Constitution" and (2) there is a "causal connection" between

25  the defendant's alleged UCL violation and the plaintiff's injury in fact.  *See Rubio v. Capital One*

26  *Bank*, 613 F.3d 1195, 1203-04 (9th Cir. 2010) (citations omitted).

27      The UCL incorporates other laws and treats violations of those laws as unlawful business

28  practices independently actionable under state law.  *Chabner v. United Omaha Life Ins. Co.*, 225

F.3d 1042, 1048 (9th Cir. 2000).  Violation of almost any federal, state or local law may serve as the basis for a UCL claim.  *Saunders v. Superior Court*, 27 Cal. App. 4th 832, 838–39 (1994).  In addition, a business practice may be "unfair or fraudulent in violation of the UCL even if the practice does not violate any law."  *Olszewski v. Scripps Health*, 30 Cal.4th 798, 827 (2003).

Plaintiff's UCL claim is based on Defendants' allegedly "execut[ing] and record[ing] the June 23, 2011 Notice of Default, knowing that it [*sic*] did not hold the beneficial interest in the Deed of Trust, and thus lacked the legal power to initiate a foreclosure."  FAC ¶ 29.  26.

The claim fails because it does not assert the requisite harm.  Plaintiff alleges that because of Defendants' unfair business practices, "a cloud has been placed on Plaintiff's title and their [*sic*] interest in the Subject Property has been placed in jeopardy."  But California Business and Professions Code § 17204 requires plaintiffs to establish that they have suffered an "injury in fact and ha[ve] lost money or property as a result of the unfair competition."  *See Walker v. Geico Gen. Ins. Co.*, 558 F.3d 1025, 1027 (9th Cir. 2009).  The FAC does not allege that Plaintiff's house has been sold at a foreclosure sale.  Defendants aver that it has not yet been sold.  *See* Motion at 26.  Plaintiff has not alleged that he has lost either money or property as a result of Defendants' alleged actions.  Accordingly, the Section 17200 claim is dismissed with leave to amend.

### CONCLUSION

The court **GRANTS** Defendants' motion to dismiss Plaintiff's First Amended Complaint with prejudice as to the RICO claim and without prejudice as to all other claims.   Plaintiffs may file an amended complaint within 21 days from the date of this order.

This disposes of ECF No. 20.

**IT IS SO ORDERED.**

Dated: March 31, 2014

LAUREL BEELER
United States Magistrate Judge