1
2
3
4
5
6
7
8                    UNITED STATES  DISTRICT COURT
9                      Northern District of California
10                          San Francisco Division
11   EDGARDO C. RUBIO,                          No. C 13-05752 LB
12              Plaintiff,              **ORDER GRANTING MOTION TO**
           v.                          **DISMISS SECOND AMENDED**
13                                     **COMPLAINT**
     U.S. BANK N.A., AS TRUSTEE FOR THE
14   NOTEHOLDERS OF AEGIS ASSET                 [ECF No. 34]
     BACKED SECURITIES TRUST 2005-3;
15   OCWEN LOAN SERVICING LLC;
     WESTERN PROGRESSIVE, LLC;
16   MORTGAGE ELECTRONIC
     REGISTRATION SYSTEMS, INC.; and
17   DOES 1 - 100, Inclusive.
18              Defendants.
                                              /
19
20                           **INTRODUCTION**
21       Plaintiff Edgardo Rubio sued Defendants U.S. Bank, Ocwen Loan Servicing, Western
22   Progressive, and Mortgage Electronic Registration Systems in connection with foreclosure
23   proceedings commenced against his San Francisco property.  *See* Second Amended Complaint
24   ("SAC"), ECF No. 34.[1]  Defendants move to dismiss.  Pursuant to Civil Local Rule 7-1(b), the court
25   finds this matter suitable for determination without oral argument and vacates the June 19, 2014
26   hearing.  For the reasons discussed below, , the court **GRANTS** the motion to dismiss.
27   _____
28       [1] Citations are to the Electronic Case File ("ECF") with pin cites to the electronically-
     generated page number at the top of the document.

C 13-05752 LB
ORDER

UNITED STATES DISTRICT COURT
For the Northern District of California

<div style="text-align: left; transform: rotate(-90deg)">

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

</div>

**STATEMENT**

**I. BACKGROUND FACTS**[2]

Plaintiff Edgardo Rubio took out a $610,000 mortgage loan from Aegis Funding Corp. on a property located at 760 Bacon Street, San Francisco, California (the "Property"). *See* Second Amended Complaint ("SAC") ¶¶ 2, 9, ECF No. 34. He secured the loan with a Deed of Trust ("DOT"). On April 21, 2005, Mr. Rubio recorded the DOT in the Official Records of the San Francisco County Recorder's Office, as document number H941528.[3] *Id.* ¶¶ 2, 9, Ex. A (the Deed of Trust). The DOT names Amy Mandart as the Trustee. *See id.* Ex. A at 1. It also names Mortgage Electronic Registration Systems, Inc. ("MERS") as "nominee for Lender and Lender's successors and assigns." *Id.* Plaintiff alleges that MERS is a Delaware corporation conducting business in San Francisco, California. *Id.* ¶ 6.

The DOT contains provisions regarding choice of law, the right to transfer and sell interests in the loan, acceleration remedies, and the lender's right to substitute trustees. The choice of law provision states that the DOT "shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in [the DOT] are subject to any requirements and limitations of Applicable Law." *Id.* ¶ 27, Ex. A at 13.

The DOT includes a provision that regarding the right to sell interests in the loan, as follows:

> The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to the Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a chage of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which the payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing.

*See id.* ¶ 25, Ex. A at 14.

The DOT includes provisions for acceleration and remedies, as follows:

---

[2] The following facts are taken from the complaint, the documents attached to it, and the facts subject to judicial notice.

[3] Unless otherwise specified, the recorded documents were filed in the San Francisco County Recorder's Office.

22.  Acceleration; Remedies.  Following Borrower's breach of any covenant or agreement in this Security Instrument, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law.  Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold.  Trustee shall cause this notice to be recorded in each county in which any part of the Property is located.  Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law.  Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law.  After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines.  Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale.  Lender or its designee may purchase the Property at any sale.

*Id.* Ex. A at 15; *see id.* ¶¶ 33-35 (discussing this provision).  The DOT contains other provisions that relate to the lender's right to substitute trustees.

24.  Substitute Trustee:  Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located.  The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee.  Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law.  This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

*Id.* Ex. A at 16; *see id.* ¶ 36 (discussing this provision).

On or before June 28, 2005, Aegis securitized and sold the beneficial interest in Plaintiff's Deed of Trust to the Aegis Asset Backed Securities Trust 2005-3, Mortgage-Backed Notes (the "Trust").  *Id.* ¶ 10.  The Trust was created by a Transfer and Servicing Agreement ("T&SA") that named Wilmington Trust Company as Trustee.  *Id.* ¶ 10, Ex. B at 6, 21.  Plaintiff alleges that the T&SA requires "that as of the Closing Date, the beneficial interest was to be transferred into the MBS trust and the servicing rights were to be transferred to U.S. Bank's predecessor in interest Wachovia Bank, N.A., and for a right to cure within 90 days."  *See* SAC ¶ 42, Ex. H (excerpts from the T&SA).

Wilmington Trust Company's assets, including the Trust, were first purchased by Wachovia Bank, N.A., and then by U.S. Bank, N.A.  *Id.* ¶ 11.  U.S. Bank currently holds itself out as trustee of

1    the Trust and as the beneficial interest holder of Mr. Rubio's DOT.  *Id.*  According to a "Property

2    Securitization Report" regarding Mr. Rubio's property, the Trust is governed by the laws of New

3    York.  *Id.*; *see id.* Ex. B at 21.

4        On July 15, 2009, Western Progressive, LLC as Trustee to the DOT recorded a Notice of Default

5    and Election to Sell Under Deed of Trust (the "First NOD").  *Id.* ¶ 12.  At all relevant times,

6    Western was a limited liability company organized under the laws of Delaware and registered with

7    the California Secretary of State as business entity no. 200835710284 that conducted business in San

8    Francisco, California.  *Id.* ¶ 5.

9        On October 28, 2009, Aztec Foreclosure Corporation, recorded a substitution of trustee in which

10   MERS "solely as nominee for U.S. Bank National Association, as Indenture Trustee on behalf of the

11   Noteholders of Aegis Asset Backed Securities Trust 2005-3, Mortgage-Backed Notes as serviced by

12   Ocwen Loan Servicing, LLC" substituted Aztec as the trustee of Mr. Rubio's DOT.  *See* RJN Ex. 2.

13   Ocwen is a Delaware Limited Liability Company, registered with the California Secretary of State

14   as business entity no. 200213810063 that conducted business in San Francisco, California.  SAC ¶ 4.

15   Also on October 28, 2009, Aztec Foreclosure Service recorded a Notice of Trustee's Sale

16   ("NOTS").  *See id.* ¶ 13.

17       On June 23, 2011, "LSI Title Company, as Agent for Western as Trustee to the DOT" recorded a

18   second NOD.  *Id.* ¶ 14; *see* RJN Ex. 3.

19       On July 25, 2011, another Assignment of Deed of Trust was recorded.  SAC ¶ 15, Ex. C.  In this

20   Assignment, Defendant MERS, "acting solely as nominee for Aegis Funding Corporation, purported

21   to assign the beneficial interest in Rubio's DOT "including all rights title and interest in the

22   mortgage to U.S. BANK, N.A., AS TRUSTEE FOR THE NOTEHOLDERS OF AEGIS ASSET

23   BACKED SECURITIES TRUST 2005-3."  *Id.* ¶ 15.  The document was signed on July 1, 2011, but

24   states that the assignment was "entered into as of the 24th day of August, 2007."  *See id.* ¶ 15.

25       On September 7, 2011, Western recorded a Notice of Rescission of Notice of Default rescinding

26   the June 23, 2011 Notice of Default.  *See id.* ¶ 16; RJN Ex. 5.

27       On March 9, 2012, Western, as Trustee to the DOT, recorded a Third NOD.  SAC ¶ 17, Ex. D.

28       On July 2, 2012, LSI Title Agency recorded a Substitution of Trustee naming Western as the

UNITED STATES DISTRICT COURT
For the Northern District of California

1   Trustee in place of the original Trustee, Amy Mandart.  *Id.* ¶ 18, Ex. E.  This SOT was signed by

2   "U.S. Bank National Association, as Trustee on behalf of the Noteholders of Aegis Asset Backed

3   Securities Trust 2005-3 Mortgage-Backed Notes, By Ocwen Loan Servicing, LLC, its attorney in

4   fact."  *Id.*  Ocwen Loan Servicing, LLC is a Limited Liability Company organized under the laws of

5   Delaware and registered in California as business entity no. 200213810063.  *Id.* ¶ 4.  Although it had

6   not previously been named as trustee, Western had been recording documents since the July 15,

7   2009 NOD.  *Id.* ¶ 18.

8        Western recorded a second, third, and fourth Notice of Trustee's Sale in the San Francisco

9   County Recorder's Office on July 2, 2012, August 30, 2013, and September 4, 2013, respectively.

10  *Id.* ¶¶ 19-21, Ex. F (September 4, 2013 Notice of Trustee's Sale).  Thereafter, Trustee's Sale No.

11  2011-16973 was scheduled for January 27, 2014, to be conducted by Western on behalf of U.S.

12  Bank, as Trustee.  *Id.* ¶ 22.

13  **II. PROCEDURAL HISTORY**

14       Plaintiff filed his original complaint in San Francisco County Superior Court on November 6,

15  2013, against U.S. Bank, Ocwen Loan Servicing, and Western.  *See* Complaint, ECF No. 1-1 at 4.

16  Defendants removed this action from state court on December 12, 2013.  *See* Notice of Removal,

17  ECF No. 1.  On December 19, 2013, Defendants filed a motion to dismiss Plaintiff's claims.

18  *See* Motion to Dismiss, ECF No. 7.  On January 9, 2014, Plaintiff filed a First Amended Complaint

19  ("FAC"), ECF No. ECF No. 16.  The court denied the motion to dismiss as moot.  *See* ECF No. 17.

20       Defendants moved to dismiss the FAC on February 24, 2014.  *See* Motion to Dismiss FAC, ECF

21  No. 20.  After the motion was fully briefed, *see* ECF Nos. 24, 28, the court granted Defendants'

22  motion to dismiss.  *See* Order, ECF No. 31.

23       Plaintiff filed the operative Second Amended Complaint on April 22, 2014.  *See* SAC, ECF No.

24  34.  The SAC asserts claims for (1) breaches of express agreements, (2) breaches of implied

25  agreements, (3) slander of title, (4) wrongful foreclosure, (5) violation of the Truth in Lending Act

26  ("TILA"), 15 U.S.C. § 1601, *et seq.*, (6) violation of the Real Estate Settlement Procedures Act

27  ("RESPA"), 12 U.S.C. § 2604, and (7) violations of California's Unfair Competition Law ("UCL"),

28  Cal. Bus. & Prof. Code § 17200.

UNITED STATES DISTRICT COURT
For the Northern District of California

UNITED STATES DISTRICT COURT
For the Northern District of California

1   Defendants thereafter moved to dismiss.  *See* ECF No. 36.  On May 19, 2014, Plaintiff filed an

2   opposition brief that is a near verbatim copy of its previous, unsuccessful opposition brief.  *Compare*

3   Opp'n to Motion to Dismiss SAC, ECF No. 40, *with* Opp'n to Motion to Dismiss FAC, ECF No. 29.

**ANALYSIS**

5   **I.  MOTION TO DISMISS**

6       Rule 8(a) requires that a complaint contain a "short and plain statement of the claim showing that

7   the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  A complaint must therefore provide a

8   defendant with "fair notice" of the claims against it and the grounds for relief.  *See Bell Atlantic*

9   *Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (quotation and citation omitted).

10      A court may dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6) when it does

11  not contain enough facts to state a claim to relief that is plausible on its face.  *See Twombly,* 550

12  U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the

13  court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

14  *Ashcroft v. Iqbal,* 129 S. Ct. 1937, 1949 (2009).  "The plausibility standard is not akin to a

15  'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted

16  unlawfully."  *Id.* (quoting *Twombly*, 550 U.S. at 557).  "While a complaint attacked by a Rule

17  12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to

18  provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a

19  formulaic recitation of the elements of a cause of action will not do.  Factual allegations must be

20  enough to raise a right to relief above the speculative level."  *Twombly,* 550 U.S. at 555 (internal

21  citations and parentheticals omitted).

22      In considering a motion to dismiss, a court must accept all of the plaintiff's allegations as true

23  and construe them in the light most favorable to the plaintiff.  *See id.* at 550; *Erickson v. Pardus,* 551

24  U.S. 89, 93-94 (2007); *Vasquez v. Los Angeles County*, 487 F.3d 1246, 1249 (9th Cir. 2007).  In

25  addition, courts may consider documents attached to the complaint.  *Parks School of Business, Inc.*

26  *v. Symington,* 51 F.3d 1480, 1484 (9th Cir. 1995) (citation omitted).  If the court dismisses the

27  complaint, it should grant leave to amend even if no request to amend is made "unless it determines

28  that the pleading could not possibly be cured by the allegation of other facts."  *Lopez v. Smith*, 203

C 13-05752 LB
ORDER

1  F.3d 1122, 1127 (9th Cir. 2000) (*quoting Cook, Perkiss and Liehe, Inc. v. Northern California*

2  *Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990)).

3  **II.  REQUEST FOR JUDICIAL NOTICE**

4      Defendants ask for judicial notice of the following documents, all of which were recorded in the

5  official records of San Francisco County: (1) a deed of trust that was recorded on April 21, 2005; (2)

6  a Substitution of Trustee that was recorded on October 28, 2009; (3) a Notice of Default that was

7  recorded on June 23, 2011; (4) an Assignment of Deed of Trust that was recorded on July 25, 2011;

8  (5) a Notice of rescission of Notice of Default that was recorded on September 7, 2011; (6) a Notice

9  of Default that was recorded on March 9, 2012; (7) a Substitution of Trustee that was recorded on

10  July 2, 2012; and (8) a Notice of Trustee's Sale recorded on September 4, 2013.  Request for

11  Judicial Notice ("RJN"), ECF No. 37, Exs. 1-8.

12      In considering a motion to dismiss, the court can consider material outside the pleadings that is

13  properly the subject of judicial notice.  *See* Fed. R. Evid. 201; *Lee v. City of Los Angeles*, 250 F.3d

14  668, 689 (9th Cir. 2001); *MGIC Indemnity Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986).

15  The court also may take judicial notice of material incorporated by reference into the complaint

16  without converting the motion to dismiss into a motion for summary judgment.  *Coto Settlement v.*

17  *Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010); *Intri–Plex Technologies, Inc. v. Crest Group, Inc.*,

18  499 F.3d 1048, 1052 (9th Cir. 2007).  Documents are incorporated into the complaint by reference

19  "in situations where the complaint necessarily relies upon a document or the contents of the

20  document are alleged in a complaint, the document's authenticity is not in question and there are no

21  disputed issues as to the document's relevance."  *Coto Settlement*, 593 F.3d at 1038; *see United*

22  *States v. Corinthian Colleges*, 655 F.3d 984, 999 (9th Cir. 2011); *Knievel v. ESPN*, 393 F.3d 1068,

23  1076 (9th Cir. 2005); *Parrino v. FHP, Inc.*, 146 F.3d 699, 705, 706 n.4 (9th Cir. 1998), *rev'd by*

24  *statute on other grounds*; *Int'l Audiotext Network v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir.

25  1995) (considering an agreement that was not specifically incorporated into the complaint because

26  the complaint "relies heavily upon its terms and effect" such that the agreement is "integral" to the

27  complaint).  The defendant can attach to a motion to dismiss documents referenced in the complaint

28  in order to refute the plaintiff's claims, and the court may consider them.  *Branch v. Tunnell*, 14 F.3d

UNITED STATES DISTRICT COURT
For the Northern District of California

1   449, 454 (9th Cir. 1994) (*overruled on other grounds in Galbraith v. County of Santa Clara* 307

2   F.3d 1119, 1127 (9th Cir. 2002)).

3        Because RJN Exhibits 1, 4, and 6-8 are attached to the complaint, the court need not take judicial

4   notice of the copies attached to Defendants' RJN.  *See* Compl., Exs. A, C-F.

5        Because RJN Exhibits 3 and 5 are referenced in the SAC and form the basis of allegations

6   contained therein, the court may take judicial notice of them and may consider the facts within them.

7   Plaintiff does not object to the court taking judicial notice of the existence of these documents –

8   which are public records – but he objects to the court taking judicial notice of the "facts" contained

9   within them as "hearsay and reasonably subject to dispute."  Opp'n to RJN, ECF No. 41.  Because

10  these documents are incorporated by reference into the complaint, the court can consider them.

11       RJN Exhibit 2 is a public record the existence of which is not subject to dispute, so the court

12  takes judicial notice of it and undisputed facts contained within it.  *See Lee*, 250 F.3d at 689-90.

13  Because Plaintiff objects to the facts (though he does not specifically dispute them), the court does

14  not take judicial notice of the disputed facts within Exhibit 2.

15  **III.  GENERALLY APPLICABLE ARGUMENTS**

16       Defendants move to dismiss the Second Amended Complaint for many of the same deficiencies

17  the court identified in its Order granting Defendants' last motion to dismiss.  *See* Order, ECF No. 31.

18  Because the complaint restates many of the same arguments and the opposition is substantively

19  identical, the court incorporates its earlier analysis by reference.

20       The court first addresses several issues applicable throughout the SAC and then turns to the

21  individual claims.

22       **A.  Western Progressive's Conduct is Privileged**

23       As the court previously held in dismissing the FAC's claims against Western, "[t]o the extent

24  that Plaintiff challenges Western Progressive's recording of statutorily-required notices or

25  performing statutorily-required foreclosure procedures, they are privileged communications under

26  the qualified common-interest privilege of California Civil Code § 47."  Order, ECF No. 31 at 8.

27  The parties restate verbatim the arguments they made in connection with the FAC.  *Compare* Motion

28  to Dismiss FAC, ECF No. 20 at 10-11, *with* Motion, ECF No. 36 at 8-9; *and compare* Opp'n to

1    Motion to Dismiss FAC, ECF No. 24 at 18-19, *with* Opp'n, ECF No. 40 at 17-18.  The SAC contains

2    no new facts that alter the analysis.  Accordingly, the court dismisses the claims against Western for

3    the same reasons as before.

4    **B.  Whether Plaintiff Must Allege Prejudice From Foreclosure**

5    The next issue is whether Plaintiff has shown sufficient prejudice to challenge the foreclosure.

6    Motion at 11-12.  The court discussed this issue in the order dismissing the FAC.  *See* Order, ECF

7    No. 31at 9-10.  Ultimately, the court declined to reach the issue because it dismissed the claims on

8    other grounds.  *Id.* at 10.

9    In the current motion to dismiss, Defendants expand upon their previous arguments made in the

10   last motion that Plaintiff has not shown requisite prejudice.  Motion at 9-10; *see* Motion to Dismiss

11   FAC, ECF No. 20 at 12. The court again declines to reach this issue because the complaint fails on

12   other grounds.

13   **C.  MERS's Authority to Assign the Deed of Trust**

14   As discussed in the context of the FAC, several of Plaintiff's claims are based upon the theory

15   that MERS "could not have retained the beneficial interest in the DOT after Aegis sold this interest

16   to the securitized trust."  *See, e.g.,* SAC ¶ 37.  The court rejected Plaintiff's arguments otherwise in

17   the previous order as "contradicted by the plain language of the DOT attached to Plaintiff's

18   complaint."  *See* Order, ECF No. 31 at 12.  The SAC restates many of the same theories.  *Compare,*

19   *e.g.,* SAC ¶ 37, *with* FAC ¶ 28 (identical allegations).  Because Plaintiff fails to bolster these claims

20   with any new facts and does not provide any new arguments, the court reaches the same conclusion

21   and dismisses claims based upon this theory.

22   **D.  Standing to Assert Claims for Breach of the Transfer & Servicing Agreement**

23   The next issue is whether Plaintiff has standing to the extent his claims are based on Defendants'

24   alleged noncompliance with the Trust's Transfer and Servicing Agreement(the "TS&A").  *See,*

25   *e.g.,* SAC ¶¶ 41-52, 58, 68-88 (claims one through four).  The court previously sided with the

26   majority position that "plaintiffs lacks standing to challenge noncompliance with a pooling and

27   service agreement or other similar agreement unless they are parties to or third-party beneficiaries of

28   the agreement."  Order, ECF No. 31 at 10 (collecting cases).  The same analysis applies here.

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

1    In the SAC, Plaintiff alleges he is "the third-party beneficiary of the T&SA for the Aegis 2005-3

2    Trust." SAC ¶ 24.

3    The Ninth Circuit has explained the law governing third-party beneficiaries as follows:

> California's contract principles on third party beneficiaries are well known.  Under
> California law, a "contract, made expressly for the benefit of a third party, may be
> enforced by him at any time before the parties thereto rescind it."  Cal. Civ.Code §
> 1559.  "A third party qualifies as a beneficiary under a contract if the parties intended
> to benefit the third party and the terms of the contract make that intent evident."
> *Karo v. San Diego Symphony Orchestra Ass'n*, 762 F.2d 819, 821–22 (9th Cir. 1985)
> (citing *Strauss v. Summerhays*, 157 Cal. App. 3d 806, 204 Cal. Rptr. 227, 233
> (1984)).  Although a third party need not be expressly named or identified in a
> contract, a party must demonstrate "that [it] is a member of a class of persons for
> whose benefit it was made."  *Spinks v. Equity Residential Briarwood Apartments*, 171
> Cal. App. 4th 1004, 90 Cal. Rptr. 3d 453, 469 (2009) (internal quotation marks and
> citations omitted) (citing *Kaiser Eng'rs, Inc. v. Grinnell Fire Prot. Sys. Co.*, 173 Cal.
> App. 3d 1050, 1055, 219 Cal. Rptr. 626 (1985)).  "Whether the third party is an
> intended beneficiary . . . involves construction of the intention of the parties, gathered
> from reading the contract as a whole in light of the circumstances under which it was
> entered."  *Prouty v. Gores Tech. Gr.*, 121 Cal. App. 4th 1225, 18 Cal. Rptr. 3d 178,
> 184 (2004).

13   *Balsam v. Tucows, Inc.*, 627 F.3d 1158, 1161 (9th Cir. 2010).

14       Here, there are no factual allegations suggesting that the T&SA was intended to benefit Plaintiff.

15       Plaintiff makes three arguments in support of his third-party beneficiary claim but none of them

16   are availing.  First, "[t]he Mortgage Backed Securities Trust ('MBS Trust') is named as assignee in

17   the July 25, 2011 Assignment of Deed of Trust.  *Id.*  It is not clear why this makes Plaintiff a third-

18   party beneficiary under the TS&A and Plaintiff's opposition brief provides no explanation.

19       Second, "[t]he DOT inextricably intertwines its enforcement by acceleration and foreclosure

20   with securitization and the T&SA for the Aegis 2005-3 Trust at paragraph 20 of the DOT."  *Id.*

21   Stated differently, "the DOT obligates the parties to the DOT, and their purported assignees, to

22   comply with contractual obligations pertaining to servicing activities, and that in this case, those

23   obligations include the provisions of the Aegis 2005-3 Trust."  *Id.* ¶ 27.  Plaintiff provides no

24   coherent explanation for why that is so and the documents do not appear to plausibly support this

25   contention.

26       Third, Plaintiff argues that the T&SA "provides a duty to defend, distribution, reporting, and

27   indemnification by and among the parties and their agents, including servicers, whose agents, the

28   trustee, are contractually bound to the borrower/Plaintiff under the T&SA and the DOT, and whether

UNITED STATES DISTRICT COURT
For the Northern District of California

1  there was a breach needs to be determined at trial." *Id.* ¶ 43.  As Defendants explain, however,

2  Plaintiff's argument is that "because certain parties to the [T&SA] are also parties to the DOT, and

3  Plaintiff is a party to the DOT, Plaintiff is therefore a third party beneficiary to the [T&SA]."

4  Motion at 11.  None of these argument even plausibly allege that Plaintiff is an intended beneficiary

5  to the T&SA.  Accordingly, to the extent Plaintiff's claims are based on a breach of the T&SA, the

6  court dismisses them.

7  **IV.  THE CLAIMS IN THE SECOND AMENDED COMPLAINT**

8      **A.  Breach of Express Agreements**

9      Plaintiff's first claim is for breach of express agreements, specifically the Deed of Trust and the

10  Trust's T&SA.  *See* SAC ¶¶ 23-44.

11     To state a claim for breach of contract, a plaintiff must show the following:  (1) a contract

12  existed; (2) the plaintiff performed his duties or was excused from performing his duties under the

13  contract; (3) the defendant breached the contract; and (4) the plaintiff suffered damages as a result of

14  that breach.  *See First Commercial Mortgage Co. v. Reece*, 89 Cal. App. 4th 731, 745 (2001).

15  "Facts alleging a breach, like all essential elements of a breach of contract cause of action, must be

16  pleaded with specificity."  *See Levy v. State Farm Mut. Auto. Ins. Co.*, 150 Cal. App. 4th 1, 5 (2007).

17     "Resolution of contractual claims on a motion to dismiss is proper if the terms of the contract are

18  unambiguous."  *Monaco v. Bear Sterns Residential Mortg. Corp.*, 554 F. Supp. 2d 1034, 1040 (C.D.

19  Cal. 2008) (citing *Bedrosian v. Tenet Healthcare Corp.*, 208 F.3d 220 (9th Cir. 2000); *Westlands*

20  *Water Dist. v. U.S. Dep't of Interior*, 850 F. Supp. 1388, 1408 (E.D. Cal. 1994)).   "A contract

21  provision will be considered ambiguous when it is capable of two or more reasonable

22  interpretations."  *Id.* (citing *Bay Cities Paving & Grading, Inc. v. Lawyers' Mut. Ins. Co.*, 5 Cal. 4th

23  854, 867 (1993)).  "An ambiguity may appear on the face of an agreement or extrinsic evidence may

24  reveal a latent ambiguity."  *Fremont Indem. Co. v. Fremont Gen. Corp.*, 148 Cal. App. 4th 97, 114

25  (2007) (citation omitted).

26     As discussed, Plaintiff lacks standing to assert claims for breach of the T&SA and those claims

27  are dismissed.  This includes the allegations under the heading "Breach of Deed of Trust" in

28  paragraphs 25-32 and those under the heading "Breach of Transfer and Servicing Agreement" in

UNITED STATES DISTRICT COURT
For the Northern District of California

1    paragraphs 41-44.  Of the remaining allegations, the court previously held that allegations identical

2    to those in paragraphs 33-38 failed to state a breach of contract claim.  *See* Order, ECF No. 31 at 15;

3    *compare* FAC ¶¶ 24-29, *with* SAC ¶¶ 33-38.

4        The only remaining new allegations appears in paragraphs 39 and 40, which state:

5        39.  And should the Court still hold that Plaintiff lacks standing to challenge noncompliance
6        with a T&SA in securitization because Plaintiff was not a party to the T&SA or third party
beneficiary to the T&SA, and also that Defendants are neither the Lender or Trustee to the
7        DOT taking as true Plaintiffs allegations, Defendants still breached the DOT due to servicing
violations which Plaintiff allege were conducted by Ocwen and U.S. Bank without proper
8        notice, causing MERS to be estopped from executing any right to assign the DOT due to the
prior breach of the true Lender in privity with the Servicer, because Plaintiff was never
9        served with proper notice of change in servicer to Ocwen, or originally to Wells Fargo in
2005.

10

11        40.  Plaintiff was damaged as a direct and proximate result of Defendants' breaches of the
Deed of Trust herein described as he risks losing title and possession to his property if
12        Defendants are allowed to proceed with a foreclosure.

13    SAC ¶¶ 39-40 (errors in original).  The allegation appears to be that Defendants breached the DOT

14    by failing to give Plaintiff notice of a change in servicer in violation of paragraph 20 of the DOT,

15    which requires notice in compliance with RESPA.  The same allegation underlies Plaintiff's RESPA

16    claim, where Plaintiff alleges that "[t]here was no notice to Plaintiff of change in servicer to Ocwen

17    or Wells Fargo Bank, N.A. in 2005, subsequent to the assignment in 2011, or at all."  *See id.* ¶ 104.

18        These bare allegations remain insufficient to state a claim for breach of contract.  First, Plaintiff

19    argues the "Defendants" are liable collectively for breaching a contract to which most of them are

20    not parties.  Second, other than generally alleging that Ocwen and U.S. Bank failed to notify

21    Plaintiff of a change in servicer, the SAC does not allege any facts about the alleged transfer,

22    including when it occurred or when Plaintiff first learned of it.  Finally, Plaintiff fails to link the

23    alleged breach to any damages.  Accordingly, the court grants Defendants' motion to dismiss.

24    **B.  Breach of Implied Contract**

25        Plaintiff's second claim is for breach of implied agreement.  *See* SAC ¶¶ 45-52.  The allegations

26    supporting this claim are identical to those that the court previously found insufficient.  *Compare*

27    SAC ¶¶ 45-52, *with*  FAC ¶¶ 33-40.  The court dismisses them again for the same reasons.

28

1

**C.  Slander of Title**

2    Plaintiff next alleges slander of title in connection with the NODs, NOTS, and the substitution of

3    trustee.  *See* SAC ¶¶ 53-66.  Most of the allegations are identical to those in the FAC.  *Compare*

4    SAC ¶¶ 53-61, 65-66, *with* FAC ¶¶ 41-50.  On their own, those allegations are insufficient to state a

5    claim for slander of title.  *See* Order, ECF No. 31 at 18.  The new allegations attempt to bolster

6    Plaintiff's challenge to the Trust's T&SA.  *See* SAC ¶¶ 62-64.  That theory fails for the reasons

7    discussed above.  Accordingly, the court dismisses this claim.

8    **D.  Wrongful Foreclosure**

9    Plaintiff's next claim is for wrongful foreclosure.  *See* SAC ¶¶ 67-88.  The court previously

10   dismissed this claim to the extent it was based on Plaintiff's erroneous theory that the late transfer to

11   the Trust violated the T&SA (referred to in the previous complaint as the PSA) and that this

12   rendered invalid the subsequently-recorded foreclosure documents.  *See* Order, ECF No. 31 at 18.

13   The SAC contains the same allegations supplemented with legal arguments and factual allegations.

14   *See* SAC ¶¶ 69-85 (new allegations).  The new allegations provide additional detail about Plaintiff's

15   theory.  They do not change the fact that Plaintiff lacks standing to sue based on these allegations.

16   The court dismisses this claim.

17   **E.  TILA**

18   Plaintiff's fifth claim for violation of TILA.  The court dismissed this claim as barred by the

19   statute of limitations and because Plaintiff pleaded no evidence to establish equitable tolling.

20   *See* Order, ECF No. 31at 19-21.  The TILA claim in the SAC is substantively identical.

21   *Compare* SAC ¶¶ 89-100, *with* FAC ¶¶ 66-77 (differences are references to the "T&SA" instead of

22   the "PSA" and a reference to the attached T&SA provision in ¶ 94).  The court dismisses it for the

23   same reasons.

24   **F.  RESPA**

25   In the sixth claim, Plaintiff alleges U.S. Bank, Ocwen, and Western violated RESPA, 12 U.S.C.

26   § 2605, by failing to respond to Plaintiff's November 6, 2013 letter.[4]  Defendants argue that the

27   _____

28       [4]  While paragraphs 78-82 of the SAC appear to allege claims related to the November 6,
     2013 letter, paragraphs 83-91 contain allegations and legal theories related to Plaintiff's position that

UNITED STATES DISTRICT COURT
For the Northern District of California

1   claim is insufficiently pleaded.  The court agrees.

2       RESPA provides plaintiffs with a private right of action for three types of wrongful acts: "(1)

3   payment of a kickback and unearned fees for real estate settlement services, 12 U.S.C. § 2607(a),

4   (b); (2) requiring a buyer to use a title insurer selected by a seller, 12 U.S.C. § 2608(b); and (3) the

5   failure by a loan servicer to give proper notice of a transfer of servicing rights or to respond to a

6   qualified written request for information about a loan, 12 U.S.C. § 2605(f)." *Choudhuri v. Wells*

7   *Fargo Bank, N.A.*, No. C 11-00518 SBA, 2011 WL 5079480, at *8 (N.D. Cal. Oct. 25, 2011) (citing

8   *Patague v. Wells Fargo Bank, N.A.*, No. C 10-03460 SBA, 2010 WL 4695480, at *3 (N.D. Cal. Nov.

9   8, 2010)).

10      Here, Plaintiff alleges that U.S. Bank, Ocwen, and Western failed to notify him about a transfer

11  of servicing rights that took place in 2005.  *See* SAC ¶ 104.

12      First, Plaintiff does not allege that U.S. Bank or Western are loan servicers subject to RESPA.

13  Accordingly, the RESPA claim fails as to them.

14      Second, Plaintiff's RESPA claim is subject to a three-year statute of limitations.  12 U.S.C.

15  § 2614.  Plaintiff argues that his loan servicer changed in 2005 but he did not file suit until 2013.

16  *See* SAC ¶ 104.  He alleges that the statute of limitations should be equitably tolled because of "the

17  misrepresentations and wrongful actions of defendants."  *Id.* ¶ 105.  "Equitable tolling applies when

18  the plaintiff is prevented from asserting a claim by wrongful conduct on the part of the defendant."

19  *Stoll v. Runyon*, 165 F.3d 1238, 1242 (9th Cir. 1999).  Here, however, the complaint contains no

20  specific factual allegations to support equitable tolling.  Accordingly, there is no basis for tolling the

21  statute of limitations, which bars Plaintiff's RESPA claim.

22      Third, even if the transfer of servicing allegations were sufficient, Plaintiff fails to plead

23  damages.  In order to avoid dismissal of a RESPA claim, the plaintiff must plead specific facts

24  showing that he suffered "pecuniary damages."  *Allen v. United Fin. Mortg. Corp.*, 660 F. Supp. 2d

25  1089, 1097 (N.D. Cal. 2009).  Moreover any injury must be "a result of the failure" to comply with

26  RESPA.  12 U.S.C. § 2605(f)(1)(A).  This pleading requirement limits RESPA claims to

27  _____

28  the assignment to U.S Bank was invalid.  In the context of a RESPA claim, these allegations are
    unintelligible.  Accordingly, to the extent they purport to state a claim, the court dismisses it.

UNITED STATES DISTRICT COURT
For the Northern District of California

circumstances in which a plaintiff can allege specific facts to show causation – "actual damages to the borrower as a result of the failure [to comply with RESPA requirements]." *Lal v. Am. Home Servicing, Inc.*, 680 F. Supp. 2d 1218, 1223 (E.D. Cal. 2010); *see also Tamburri v. Suntrust Mortg., Inc.,* 875 F. Supp. 2d 1009, 1014 (N.D. Cal. 2012); *Jenkins,* 216 Cal. App. 4th at 531-32.

The RESPA claim fails because the SAC alleges no facts showing that Plaintiff suffered "actual damages" as a result of Defendants' failure to inform him of the transfer in servicing rights. In fact, Plaintiff specifically alleges that he was damaged by "the initiation of the foreclosure by making payments rather than pursuing alternative measures to avoid the foreclosure sale . . . ." SAC ¶ 110. Because Plaintiff was able to make payments to the servicer, it is implausible that the transfer in servicing rights led to the initiation of foreclosure proceedings. Because Plaintiff again fails to tie damages to the alleged RESPA violation, the court grants Defendants' motion to dismiss this claim.

## G.  UNFAIR COMPETITION LAW

Plaintiff's final claim is for violation of California's Unfair Competition Law (the "UCL"), California Business and Professions Code section 17200. Again, these allegations are identical to those in the FAC. *Compare* SAC ¶¶ 114-121, *with* FAC ¶¶ 137-144. And again, the court dismisses the claim for failure to allege harm – the same reason as before. *See* Order, ECF No. 31 at 26-27.

## H.  LEAVE TO AMEND

The court previously dismissed most of Plaintiff's claims with leave to amend. *See id.* at 27 (dismissing RICO claim with prejudice and all other claims without prejudice). The order identified deficiencies and provided the legal context for counsel to fix them. Plaintiff filed a similar complaint with similar cut-and-paste components and did not address the deficiencies that the prior order identified. Under these circumstances, the court finds that giving another opportunity to amend would be an exercise in futility and a waste of judicial resources. *See Ferdik v. Bonzelet*, 963 F.2d 1258, 1261 (9th Cir. 1992) (affirming dismissal with prejudice where district court had instructed *pro se* plaintiff regarding deficiencies in prior order dismissing claim with leave to amend). The court dismisses all claims with prejudice.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### CONCLUSION

The court **GRANTS** Defendants' motion to dismiss Plaintiff's Second Amended Complaint with prejudice.

This disposes of ECF No. 34.

**IT IS SO ORDERED.**

Dated: June 10, 2014



LAUREL BEELER
United States Magistrate Judge